851 P.2d 291 (1993)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of D.C., a Child, and Concerning M.C., Respondent-Appellant, and
J.M. and C.M., Intervenors-Appellees.
No. 91CA1715.
Colorado Court of Appeals, Div. I.
March 25, 1993.
*292 Scott R. Foncannon, Rocky Ford, for petitioner-appellee.
Edward Garlington, Jr., La Junta, guardian ad litem.
Mark A. MacDonnell, Las Animas, for respondent-appellant.
Phillip F. Malouff, Jr., La Junta, for intervenors-appellees.
Opinion by Judge DAVIDSON.
This case arises from proceedings held pursuant to the provisions of the permanency planning statute found in the Children's Code at § 19-3-702, C.R.S. (1992 Cum.Supp.). Pursuant to that statute, if a child cannot be returned home pursuant to § 19-1-115(4)(b), C.R.S. (1992 Cum.Supp.), the court may hold a permanency planning hearing to determine the long-term status of the child. See Shink & Lauer, House Bill 1268In the Best Interests of the Child, 18 Colo.Law. 1703 (1989). At the hearing, the court may terminate a parent's legal rights to the child or, without terminating the parent's legal rights, order the long-term care of the child to be placed with a legal custodian, guardian, foster parent, or other appropriate caregiver. Here, after a permanency planning hearing, the court granted permanent custody of the child, D.C., to J.M. and C.M., the foster parents (intervenors). M.C. (mother) appeals from that order and we affirm.
As relevant here, the record indicates the following events. A petition in dependency and neglect was filed as to D.C. on March 17, 1988, and the court vested temporary legal custody of D.C. in the Department of Social Services. The Department placed physical custody of D.C. with intervenors, and he has so remained throughout the duration of these proceedings.
Pursuant to mother's admission, D.C. was adjudicated dependent and neglected on April 6, 1988. After a dispositional hearing on April 22, 1988, the trial court adopted a treatment plan for mother and review hearings were held.
On July 19, 1990, the guardian ad litem (GAL) filed a motion for permanency planning hearing pursuant to § 19-3-702. The trial court, in its notice of permanency planning hearing, set the hearing for October 4, 1990.
Also on July 19, 1990, intervenors moved to intervene in the action. After a hearing on September 25, 1990, their motion was granted. The propriety of the order granting intervention is not raised on appeal, and therefore is not addressed.
Intervenors, shortly after they were permitted intervention, filed motions for permanency planning and to amend the treatment plan. Intervenors also filed a motion for custody evaluation by a licensed mental health professional pursuant to § 14-10-127, C.R.S. (1992 Cum.Supp.).
The record reflects that on October 26, 1990, the trial court approved and entered as an order the parties' stipulation concerning the professional who would conduct the custody evaluation and the procedures to be followed in making the evaluation. On February 8, 1991, the trial court approved and entered as an order the parties' further stipulation changing the professional who would conduct the evaluation.
After the initial custody evaluation was completed, mother filed a motion for a supplemental evaluation pursuant to § 14-10-127. After allowing the other parties to respond, the trial court denied mother's motion.
On April 10, 1991, intervenors filed a petition for custody of D.C. under the provisions of the Uniform Dissolution of Marriage Act, § 14-10-101, et seq., C.R.S. (1987 Repl.Vol. 6B) (UDMA). Pursuant to § 19-1-104(4), C.R.S. (1992 Cum.Sup.), the petition for custody was certified to be determined as part of this pending dependency and neglect action.
The permanency plan for D.C. was filed by the Department of Social Services on June 18, 1991. It recommended, inter alia, that intervenors be granted permanent physical and legal custody of D.C.
*293 On June 26, 1991, and July 25 and 26, 1991, the trial court held a joint motions hearing on the GAL's motion for permanency planning and also on the intervenors' motion for permanency planning, motion to amend the treatment plan, and petition for custody. After making extensive findings, the trial court granted intervenors' petition for custody and entered ancillary orders thereto. Mother appeals from this order.

I.

A.
Mother initially contends that, after the foster parents were allowed to intervene, the trial court erred by conducting these proceedings pursuant to the provisions of the UDMA, instead of the dependency and neglect provisions of the Colorado Children's Code, § 19-1-101, et seq., C.R.S. (1992 Cum.Supp.). Although we conclude that the trial court erred in part in relying on the custody evaluation statute found at § 14-10-127, we conclude that this impropriety does not warrant reversal.
Here, the record shows that both the GAL and the intervenors filed motions for permanency planning, as § 19-3-702 permitted them to do. The register of actions then shows that the trial court correctly sent a notice of permanency planning, obtained a permanency planning report from the department, and scheduled a permanency planning hearing, which actions were all taken pursuant to the permanency planning statute, § 19-3-702. The trial court held the permanency planning hearing in conjunction with other pending motions, including intervenors' motions for custody and amendment of the treatment plan.
After the hearing, the trial court entered an order resolving the permanency planning issues. Since we lack a transcript of the permanency planning hearing, we must presume that the trial court correctly followed the provisions of § 19-3-702 in conducting that hearing. See Loomis v. Seely, 677 P.2d 400 (Colo.App.1983). Moreover, throughout these proceedings, the trial court continued to hold periodic review hearings, as required by § 19-1-115(4), C.R.S. (1992 Cum.Supp.). We therefore find no error in the trial court's conduct of the permanency planning proceedings in general.
However, we do conclude that the trial court erred in ordering a custody evaluation of the parties pursuant to the provisions of the custody evaluation statute found in the UDMA at § 14-10-127. In People in Interest of R.E., 721 P.2d 1233 (Colo.App.1986), we held that when a custody issue is handled within the context of a dependency action, the criteria which the court must use to determine custody are those found in the Children's Code. Consequently, we concluded that the factors listed in § 14-10-131, C.R.S. (1987 Repl.Vol. 6B) for modification or change of custody are not relevant in determining custody in a dependency proceeding. The same reasoning applies with regard to application of the custody evaluation statute found in the UDMA when custody is being determined within a dependency proceeding, as occurred here.
We conclude that once a petition for custody filed pursuant to § 14-10-123, C.R.S. (1987 Repl.Vol. 6B) is certified pursuant to § 19-1-104(4) to be determined as part of a pending dependency and neglect action, the provisions of the UDMA, including the custody evaluation statute found at § 14-10-127, are no longer relevant to the proceedings. Thereafter, the custody dispute is to be conducted pursuant to the provisions of the Children's Code. See § 19-3-702(7), C.R.S. (1992 Cum.Supp.).
Such a conclusion is in harmony with the differing policies behind the UDMA and the dependency and neglect provisions of the Children's Code.
In a proceeding brought pursuant to the UDMA, the jurisdiction of the trial court normally is exercised on the husband and wife and possibly a third private party. See § 14-10-123(1)(a) and (b), C.R.S. (1987 Repl.Vol. 6B). The court determines accordingly which party is best suited to maintain the custody of the child, without abrogating the legal rights of the other parties to enjoy a continued relationship with the child.
*294 In contrast, the jurisdiction of the trial court in a dependency and neglect proceeding involves the state as parens patriae of the child, the child, the parents of the child, and any other special respondents or intervenors with an interest in the child. See Johnson v. Black, 137 Colo. 119, 322 P.2d 99 (1958); see also People in Interest of D.A.K., 198 Colo. 11, 596 P.2d 747 (1979); §§ 19-3-101(3), 19-3-503, and 19-3-508, C.R.S. (1992 Cum.Supp.). The state is placed in the position of determining to what extent, if any, the parents may retain their legal parental rights with regard to their child and who is the most appropriate long-term custodian of the child. Consequently, the scope of a dependency proceeding is far broader and can encompass more complex issues than those encountered in a dispute brought under the UDMA.
Thus, because a dependency and neglect proceeding concerns different matters and fulfills a different purpose than a proceeding under the UDMA, procedures applicable to the UDMA generally are not useful in accomplishing the goals of the Children's Code. Therefore, to engraft the custody provisions of the UDMA onto proceedings under the Children's Code would only lead to confusion and conflict between countervailing policies and procedures under the two different acts. Consequently, the trial court erred in conducting the custody evaluation in this case under the provisions of § 14-10-127. Cf. People in Interest of R.E., supra.
However, we find no reversible error here. Except for the proceedings concerning the custody evaluation, the trial court properly conducted the dependency and neglect and custody proceedings pursuant to the provisions of the Children's Code. In this regard, we note that the trial court, in its conclusions of law, expressly stated that in making its findings and conclusions it relied on the purposes of the Children's Code found at § 19-1-102, C.R.S. (1992 Cum.Supp.) and on the paramount best interests of the child. Its findings more than amply support these conclusions.
Moreover, mother stipulated to the mental health professional who conducted the custody evaluation and the procedures to be followed in obtaining the evaluation. Furthermore, the record reflects that the evaluation was conducted at state expense. Consequently, mother obtained, at state expense, a free custody evaluation by an expert of her own choosing, pursuant to procedures to which she stipulated.
The fact that mother may not have agreed with the evaluation does not lead us to conclude that reversible error occurred, particularly since neither the evaluation nor the testimony of the custody evaluator was provided as part of the record on appeal. See Loomis v. Seely, supra.
Therefore, since the court relied on the proper criteria for making the custody determination, see People in Interest of R.E., supra, and, since from the limited record before us, we can find no undue prejudice to mother as a result of the custody evaluation proceedings, we conclude that any reliance by the court on the statutory criteria for determining custody under the UDMA was harmless error. See C.R.C.P. 61; Roberts v. C & M Ready Mix Concrete Co., 767 P.2d 769 (Colo.App.1988) (judgment will not be reversed for error which is not shown to be prejudicial to a substantial right of aggrieved party).

B.
Given our determination that the provisions of the UDMA custody evaluation procedure found at § 14-10-127 were not applicable to these proceedings, we reject mother's argument that the trial court erred in denying her motion for supplemental custody evaluation made pursuant to § 14-10-127(1), C.R.S. (1992 Cum.Supp.).

II.
Mother also contends that the trial court erred in invoking a presumption based on gender in determining which proposed custodian would serve the best interests of the child. We disagree.
Here, mother asserts that the trial court, in part of one of its numerous findings, *295 determined that a child such as D.C. would be "terribly disadvantaged" if raised by a single mother. Consequently, she argues that the court made a determination based on her gender that she could not serve as a proper custodian for D.C. We disagree with mother's characterization of this finding.
When one considers the portion of the finding cited by mother, either alone or in conjunction with the findings as a whole, it is clear that the trial court focused on the extensive special needs of D.C. and the ability of the parties to provide for these needs. We find nothing in the court's findings to indicate that the custody award was based impermissibly on gender. See In re Marriage of Beyer, 789 P.2d 468 (Colo.App. 1989).

III.
Mother finally contends that the court erred in not granting her motion for continuance on the first day of trial. Again, we do not agree.
On June 26, 1991, the register of actions reflects that mother's counsel orally moved for a continuance of the motions hearing, which was denied by the trial court as to the testimony of the custody evaluator, but granted as to further witnesses. Mother now argues that this was error, alleging that she was prejudiced by her inability to be present and help her counsel during his cross-examination of that witness.
Mother has failed to provide on appeal the transcript of the June 26, 1991, hearing. Without a transcript of both the argument made concerning the motion to continue and the testimony of the custody evaluator, we must presume that the trial court's actions are correct. Arguments of counsel in briefs may not substitute for the certified transcript. Loomis v. Seely, supra. We therefore reject mother's contention.
The order is affirmed.
PIERCE and METZGER, JJ., concur.