L.A.G., Petitioner,

v.

The **PEOPLE** of the State of Colorado, Upon the Petition of the Denver County Department of Social Services, Respondent,

In the Interest of A.A.G., L.T.G., and V.N.G., Children,

and Concerning A.G., Respondent.

No. 95SC176.

Supreme Court of Colorado, En Banc.

March 25, 1996.

Deborah Gans, Denver, for Petitioner.

No appearance by Respondents.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *People in the Interest of A.A.G., L.T.G., and V.N.G.*, 902 P.2d 437 (Colo.App.1995), the court of appeals affirmed an order of the Denver Juvenile Court in a dependency and neglect proceeding awarding joint custody of three minor children, A.A.G., L.T.G., and V.N.G., to the father, A.G., and to the mother, L.A.G. The juvenile court applied section 14–10–124(1) and (1.5), 6B C.R.S. (1987), of the Uniform Dissolution of Marriage Act (the Act) in rendering its decision. The court of appeals held that the juvenile court erred in applying the Act rather than the applicable provisions of the Children's Code, sections 19–1–101 to 19–6–106, 8B C.R.S. (1995 Supp.)

(the Code), but affirmed the order of joint custody on the grounds that the legal standard applicable to the proceeding is identical to the standard applied by the juvenile court and because joint custody is a viable placement alternative under section 19–3–508(1)(a), 8B C.R.S. (1995 Supp.), of the Code. Having granted certiorari to review the propriety of the court of appeals' decision, we affirm in part, reverse in part, and remand the case to that court with directions to return the case to the juvenile court for further proceedings.

I

On February 16, 1990, the Denver Department of Social Services (the Department) filed a petition in dependency and neglect in the Denver Juvenile Court in the interest of A.A.G., L.T.G., and V.N.G. At that time, the children's parents, L.A.G. (the mother) and A.G. (the father), were parties to a dissolution of marriage proceeding in the Denver District Court.

The petition contained the following pertinent allegations respecting the requested relief:

(a) That their parent, guardian or legal custodian has abandoned them or subjected them to mistreatment or abuse, or has suffered or allowed another to mistreat or abuse the children without taking lawful means to stop such mistreatment or abuse and prevent it from recurring;

(b) That they lack proper parental care through the actions or omissions of the parent, guardian or legal custodian;

(c) That their environment is injurious to their welfare;

(d) That their parent, guardian or legal custodian fails or refuses to provide proper or necessary subsistence, education, medical care or any other care necessary for their health, guidance or well-being;

(e) That said children are homeless, without proper care or not domiciled with their parent, guardian or legal custodian;

through no fault of such parent, guardian or legal custodian.

(f) That said children have run away from home or are otherwise beyond the control of their parent, guardian or legal custodian.

The Department also alleged that L.T.G. had informed social workers and others that the father had sexually abused her, that a medical examination revealed that L.T.G. had "an enlarged vaginal opening with a tear," and that the father and mother were experiencing "severe marital stresses."

The mother waived her right to a jury trial and entered an admission that the children's environment was injurious to their welfare, asserting as a factual basis the allegations relating to sexual abuse and severe marital stresses. On March 15, 1990, based upon that admission, the juvenile court adjudicated the children dependent and neglected with respect to the mother.

The father denied the allegations that he had sexually abused L.T.G. and initially requested a jury trial. The Department subsequently filed an amended petition that incorporated all of the allegations contained in the initial petition and alleged additional, more detailed facts concerning the father's alleged sexual abuse of L.T.G. and the discord between the parents. The father continued to deny all allegations that he had sexually abused L.T.G., but ultimately entered an admission that the children's environment was injurious to their welfare, asserting as a factual basis the allegations relating to discord between the parents. On November 18, 1991, based upon this admission, the juvenile court adjudicated the children dependent and neglected with respect to the father.

On August 1, 1990, pursuant to section 19–1–104(4)(a), 8B C.R.S. (1995 Supp.), the district court entered an order in the dissolution of marriage proceeding directing the juvenile court to determine the issue of custody of the three minor children and to certify the results of that determination to the district court for incorporation into the permanent orders. The district court had previously entered an order granting temporary custody of the three children to the mother.

On January 31, 1992, the juvenile court adopted a treatment plan in the dependency and neglect proceeding with respect to the mother. The plan included provisions requiring supervised visits between the children and the father. The mother was twice found to be in contempt of court for failing to comply with the requirements for supervised visits between the children and the father.[1]

On October 5, 1992, the father filed a motion with the juvenile court seeking sole permanent custody of the children. A hearing on that motion was held on July 9, 1993. Prior to the hearing, the Department filed a report recommending that the mother retain custody of the three children. During the hearing, nine witnesses testified, including the father, the mother, one of the children, and two expert witnesses. Following the hearing, the Department withdrew its recommendation and declined to make any recommendation regarding custody. The court-appointed guardian ad litem recommended that the mother retain custody of the children.

On August 23, 1993, the juvenile court issued an order granting joint legal and physical custody of the three children to the father and the mother. In its order the juvenile court incorrectly referred to the father's motion for sole permanent custody as a motion for joint custody. Noting the district court's earlier order granting the mother temporary custody of the children, the

---

1. On the first occasion, the juvenile court found the mother to be in contempt for failing to comply with an order entered on March 15, 1990, and imposed a fine of $50. On the second occasion, the juvenile court found the mother to be in contempt for failing to comply with an order entered on January 31, 1992, and made a part of the treatment plan, and ordered the mother to serve ten days in prison. The mother asserted on each occasion that the children feared their father and did not want to see him under supervised conditions. The record reveals that on some occasions the father had unsupervised visits with one or more of the children.

juvenile court held that the provisions of section 14–10–124 of the Act governed the issue of permanent custody certified by the district court.

The juvenile court determined that the custody provisions of the Act are designed to "encourage frequent and continuing contact between each parent and the minor children of the marriage after the parents have separated or dissolved their marriage" and to encourage parents to "share the rights and responsibilities of child-rearing. . . ." The juvenile court then stated that allowing the mother to retain custody would not serve the goal of encouraging continued contact between the children and each parent because the mother did not encourage and may have discouraged visitation with the father and the development of a healthy relationship between the children and the father.[2] The juvenile court found that the children's mental and physical health had deteriorated under the mother's care and that allegations of physical abuse of the children and sexual abuse of L.T.G. by the father were unsubstantiated. Furthermore, the juvenile court stated that the father had clearly demonstrated a willingness to cooperate in all aspects of the children's treatment and concluded that the father more likely than the mother would act in the best interests of the children and would encourage a healthy relationship between the children and the mother.

On appeal, the court of appeals affirmed the juvenile court's order. *People in the Interest of A.A.G., L.T.G., and V.N.G.,* 902 P.2d 437 (Colo.App.1995). Although the court of appeals concluded that the juvenile court had erroneously failed to apply applicable provisions of the Code in determining the issue of custody, the court of appeals concluded that no reversible error occurred because the "best interests of the child" standard established by the Act is identical to the

"best interests of the child" standard established by the Code and because joint custody is a viable placement alternative under section 19–3–508(1)(a) of the Code. *People in Interest of A.A.G.,* 902 P.2d at 438–39.

## II

The mother contends that 'the juvenile court erred in applying provisions of the Act rather than provisions of the Code. We agree with this argument, as did the court of appeals. However, we do not agree with the mother's implied argument that the court of appeals erred in failing to reverse the juvenile court's award of joint custody on this ground alone.

The court of appeals concluded that once an issue of child custody is certified to a juvenile court pursuant to section 19–1–104(4)(a), 8B C.R.S. (1995 Supp.), the juvenile court must determine the question of custody according to the provisions of the Code. We agree with that conclusion.

██ Dissolution of marriage proceedings in Colorado are governed by the Act. In determining issues of custody in the course of a dissolution of marriage proceeding, a district court must apply the provisions of section 14–10–124(1.5), 6B C.R.S. (1987), which statute provides as follows:

(1.5) The court shall determine custody in accordance with the best interests of the child. The court, upon the motion of either party or upon its own motion, may order joint or sole custody after making a finding that joint or sole custody would be advantageous to the child and in his best interests. In determining the best interests of the child, the court shall consider all relevant factors, including:

(a) The wishes of the child's parents as to his custody;

(b) The wishes of the child as to his custodian;

---

**2.** The juvenile court stated that its finding that the mother was not encouraging visitation with the father or a relationship between the children and the father was based on the fact that the mother had twice been held in contempt of court for failing to encourage visits between the father and the children and on one expert witness' testimony that the children had become alienated from their father due to the mother's anger and bitterness toward the father.

(c) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The mental and physical health of all individuals involved;

(f) The ability of the custodian to encourage the sharing of love, affection, and contact between the child and the noncustodial party;

(g) Credible evidence of the ability of the parties to cooperate and to make decisions jointly;

(h) Credible evidence of the ability of the parties to encourage the sharing of love, affection, and contact between the child and the other party;

(i) Whether the past pattern of involvement of the parties with the child reflects a system of values, time commitment, and mutual support which would indicate an ability as joint custodians to provide a positive and nourishing relationship with the child;

(j) The physical proximity of the parties to each other as this relates to the practical considerations of awarding joint custody;

(k) Whether an award of joint custody will promote more frequent or continuing contact between the child and each of the parties;

(l) Whether one of the parties has been a perpetrator of child abuse or neglect under section 18–6–401, C.R.S., or under the law of any state, which factor shall be supported by credible evidence. If the court makes a finding of fact that one of the parties has been a perpetrator of child abuse or neglect, then it shall not be in the best interests of the child to award joint custody over the objection of the other party or the guardian ad litem of the child.

(m) Whether one of the parties has been a perpetrator of spouse abuse as defined in subsection (4) of this section, which factor shall be supported by credible evidence. If the court makes a finding of fact that one of the parents has been a perpetrator of spouse abuse, then it shall not be in the best interests of the child to award joint custody over the objection of the other party or the guardian ad litem of the child, unless the court finds that the parties are able to make shared decisions about their children without physical confrontation and in a place and manner which is not a danger to the abused spouse or the child.

§ 14–10–124(1.5), 6B C.R.S. (1987). Thus in determining the "best interests of the child" in a dissolution proceeding, a district court must consider all of the factors specifically listed in section 14–10–124(1.5), as well as other "relevant factors." *In re Marriage of Lester*, 791 P.2d 1244, 1246 (Colo.App.1990). A district court may order joint custody in a dissolution proceeding upon the motion of either party or upon its own motion if the court finds that joint custody would be advantageous to the child and in the child's best interests. § 14–10–124(1.5), 6B C.R.S. (1987).

Proceedings in dependency and neglect in Colorado are governed by the Code. The juvenile court has exclusive jurisdiction in dependency and neglect proceedings. § 19–1–104(1)(b), 8B C.R.S. (1995 Supp.). The juvenile court also has exclusive jurisdiction to determine the custody of a child who is subject to the juvenile court's exclusive jurisdiction under the Code. § 19–1–104(1)(c), 8B C.R.S. (1995 Supp.).

The Code contains the following language with respect to the determination of custody issues when a dissolution of marriage proceeding and a juvenile proceeding involving the same child occur concurrently:

(4) Nothing in this section shall deprive the district court of jurisdiction to appoint a guardian for a child nor of jurisdiction to determine the legal custody of a child upon writ of habeas corpus or when the question of legal custody is incidental to the determination of a cause in the district court; except that:

(a) If a petition involving the same child is pending in juvenile court or if continuing jurisdiction has been previously acquired by the juvenile court, the district court shall certify the question of legal custody to the juvenile court; and

(b) The district court at any time may request the juvenile court to make recommendations pertaining to guardianship or legal custody.

§ 19–1–104(4)(a), (b), 8B C.R.S. (1995 Supp.). The General Assembly has thus determined that when a child is simultaneously subject to the jurisdiction of a district court in a dissolution of marriage proceeding and to the jurisdiction of a juvenile court in a dependency and neglect proceeding, the district court must certify the issue of custody of that child to the juvenile court for adjudication.

When a juvenile court finds that the allegations of a petition in dependency and neglect are supported by a preponderance of the evidence, the court must determine whether the child is neglected or dependent. § 19–3–505(7)(a), 8B C.R.S. (1995 Supp.). In this case, the juvenile court had concluded that the three children were dependent and neglected as to both the father and the mother prior to its determination of custody issues. The juvenile court based its conclusions that the children were dependent and neglected with respect to both their parents on the ground that the children's environment was injurious to their welfare.

■ If a child is adjudicated dependent or neglected, the juvenile court must "hear evidence on the question of the proper disposition best serving the interests of the child and the public." § 19–3–507(1)(a), 8B C.R.S. (1995 Supp.). In appropriate circumstances the juvenile court may terminate a parent-child relationship. § 19–3–604, 8B C.R.S. (1995 Supp.); *B.B. v. People*, 785 P.2d 132, 136 (Colo.1990). The juvenile court is also authorized to "place the child in the legal custody of one or both parents or the guardian, with or without protective supervision, under such conditions as the court deems necessary and appropriate." § 19–3–

508(1)(a), 8B C.R.S. (1995 Supp.). Thus, the exclusive authority of a juvenile court to determine issues of child custody arising in the course of dependency and neglect proceedings is established by the Code. The Code contains no provisions suggesting that in determining custody issues a juvenile court may apply standards and policies contained in the Act. *See People in the Interest of D.C.*, 851 P.2d 291, 293 (Colo.App.1993).

The juvenile court in this case specifically declined to apply provisions of the Code to the issue of child custody arising in the course of the dependency and neglect proceeding over which it presided. In view of the applicable legislative provisions, we agree with the conclusion of the court of appeals that the juvenile court erred in relying solely upon provisions of section 14–10–124 of the Act and declining to apply applicable provisions of the Code in determining the issue of custody of the three children.

### III

The mother argues that the Code does not authorize an order of joint custody in dependency and neglect proceedings. We reject this argument.

■ Section 19–3–508(1)(a) of the Code provides that when a dispositional decree does not terminate the parent-child relationship, the juvenile court may, among other things, "place the child in the legal custody of one or both parents . . . ." The court of appeals in this case concluded that joint custody must be a viable placement alternative under section 19–3–508(1)(a) of the Code because when the parents' marriage has been dissolved, the only mechanism by which custody may be placed with "both parents" is an order of joint custody. *People in Interest of A.A.G.*, 902 P.2d at 438–39. However, a child may be adjudicated dependent and neglected pursuant to the Code when the child's parents remain married. In that circumstance, a dispositional decree awarding custody to "both parents" need not be interpreted as the equivalent of an award of joint custody to

divorced parents.[3]

■ Notwithstanding this theoretical distinction, the broad purposes of the Code emphasize the paramount importance of providing remedies that will further the best interests of a child. A juvenile court has the responsibility of making determinations regarding the custody and care of a child adjudicated to be dependent or neglected pursuant to that primary purpose. *City and County of Denver v. Juvenile Court,* 182 Colo. 157, 163–64, 511 P.2d 898, 900–01 (1973). In view of the broad purposes of the Code and its primary purpose of securing a custodial setting that will further the best interests of a child determined to be dependent and neglected, we conclude that section 19–3–508(1)(a), authorizing custody awards to "both parents," permits juvenile courts to award joint custody of a child to both parents of the child when circumstances so warrant.

IV

The court of appeals also held that although the juvenile court erroneously relied solely on provisions of the Act in determining the issue of custody in this case, the juvenile court's application of an erroneous standard did not constitute reversible error because the "best interests of the child" standard established by the Code is identical to the "best interests of the child" standard established by the Act. *People in Interest of A.A.G.,* 902 P.2d at 438. We conclude, contrary to the court of appeals' determination, that under the circumstances of this case the juvenile court's order of joint custody must be reversed.

A

■ In custody proceedings initiated pursuant to the Act, a district court must "determine custody in accordance with the best interests of the child." § 14–10–124(1.5), 6B C.R.S. (1987). In dependency and neglect proceedings initiated pursuant to the Code, a juvenile court, "[a]fter making an order of adjudication, shall hear evidence of the proper disposition best serving the interests of the child and the public." § 19–3–507(1)(a), 8B C.R.S. (1995 Supp.); *City and County of Denver v. Juvenile Court,* 182 Colo. at 161–64, 511 P.2d at 900–01. While both statutory provisions require a court to determine the best interests of the child, the tests to be applied in determining custody pursuant to those statutes are not identical. In a dispositional hearing held pursuant to the Code, a juvenile court must fashion a custodial remedy that serves the public as well as the best interests of the child. In cases arising under the Act, a district court is not required to apply any public interest criterion to custody issues.

Our conclusion that the juvenile court's custody order in this case must be reversed is not, however, based upon any determination of the precise meanings of the phrases "best interests of the child" and "best serving the interests of the child and the public" as adopted by the General Assembly. The General Assembly has made it clear that when custody issues arise in dissolution proceedings and in dependency and neglect proceedings, the juvenile court must resolve such issues in a manner that furthers the best interests of the children subject to such order. Although the juvenile court did consider the best interests of the three children here, it considered only certain purposes underlying the Act as contained in section 14–10–124(1). Juvenile courts conducting dependency and neglect proceedings must be guided by the underlying purposes of the Code. *See City and County of Denver v. Juvenile Court,* 182 Colo. at 161–64, 511 P.2d

---

3. In dissolution proceedings, neither a request by one parent nor consent by both parents for joint custody is a necessary condition for an ultimate decision to grant joint custody of a child to both parents. § 14–10–124(1.5), 6B C.R.S. (1987); *In re Marriage of Lampton,* 704 P.2d 847, 850 (Colo. 1985). However, the absence of such request or consent is one factor to be considered by a district court in resolving custody issues in dissolution proceedings. *Lampton,* 704 P.2d at 850. The Code does not contain provisions establishing criteria applicable specifically to issues of joint custody.

at 900–01; *Johnson v. People,* 170 Colo. 137, 141–42, 144, 459 P.2d 579, 581–82 (1969); *People in the Interest of R.E.,* 721 P.2d 1233, 1235 (Colo.App.1986). As indicated in part IVB, *infra,* many purposes underlying the Act differ in important respects from purposes underlying the Code. Assuming, as the court of appeals held, that the "best interests of the child" standard set forth in the Act is identical to the "best interests of the child" standard set forth in the Code, that standard must be applied in a manner consistent with the purposes underlying the Code. *People in Interest of R.E.,* 721 P.2d at 1235; *see People in Interest of D.C.,* 851 P.2d at 293–94.

The juvenile court relied solely on a limited number of the purposes set forth in section 14–10–124(1) of the Act in reaching its decision with respect to custody. The juvenile court also set forth very limited findings of fact in its order. The juvenile court's failure to consider any purposes of the Code, when coupled with its failure to articulate sufficient facts to permit appellate application of the appropriate legal standard, requires reversal of the custody order it entered.

### B

██ The state is the exclusive party with the ability to initiate a dependency and neglect proceeding with respect to a child pursuant to the Code. *McCall v. District Court,* 651 P.2d 392, 394 (Colo.1982). In initiating such a proceeding the state must allege in effect that one or more aspects of the child's current custodial situation is harmful to the child's health and welfare or to the interests of the public. *See* § 19–3–102(1)(a)–(f), 8B C.R.S. (1995 Supp.). Furthermore, a juvenile court may not enter an order of custody of a child in the absence of a determination that the child is dependent or neglected. § 19–3–507(1)(a), 8B C.R.S. (1995 Supp.). Thus, a precondition to any determination of custody in a dependency and neglect proceeding is a judicial determination that the child's present custodial circumstances or other aspects of the child's present environ-

ment are detrimental to the child and, with government supervision, must be altered.

In contrast, one or more private persons may initiate a custody proceeding pursuant to the Act. *See* § 14–10–123, 6B C.R.S. (1987). In most such cases evidence that at the time such proceeding is initiated conditions of the child's environment or the custodial arrangements for the child's care are injurious to the child's health or welfare or to the interests of the public is not required. Indeed, in many cases initiated pursuant to the Act it is conceded by all parties that the home environment of the child is satisfactory. While a dissolution of marriage concededly alters significant aspects of the home environment of any child directly affected by the dissolution, that home environment need not be determined unfit for child custody as a precondition to the entry of an order of dissolution.

The General Assembly has identified the following basic purposes underlying the provisions of the Code:

(a) To secure for each child subject to these provisions such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;

(b) To preserve and strengthen family ties whenever possible, including improvement of home environment;

(c) To remove a child from the custody of his parents only when his welfare and safety or the protection of the public would otherwise be endangered and, in either instance, for the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child; and

(d) To secure for any child removed from the custody of his parents the necessary care, guidance, and discipline to assist him in becoming a responsible and productive member of society.

§ 19–1–102(1)(a)–(d), 8B C.R.S. (1995 Supp.). In addition, the General Assembly has articulated the following purposes with respect to

provisions governing dependency and neglect proceedings:

> The general assembly hereby finds and declares that the stability and preservation of the families of this state, and the safety and protection of children, are matters of statewide concern. The general assembly finds that the federal "Adoption Assistance and Child Welfare Act of 1980", Federal Public Law 96–272, requires that each state make a commitment to make "reasonable efforts" to prevent the placement of abused and neglected children out of the home and to reunify the family whenever appropriate....

§ 19–3–100.5, 8B C.R.S. (1995 Supp.). While one purpose of the Code is to strengthen family ties and improve home environment, other purposes include removal of a child from the custody of the child's parents when the child's welfare and safety or the protection of the public would otherwise be endangered. § 19–1–102(1)(c), 8B C.R.S. (1995 Supp.).

The Act is designed to provide reasonable remedies for persons and families involved in dissolution of marriage proceedings. As the juvenile court correctly noted in this case, the General Assembly has urged parents involved in dissolution of marriage proceedings to encourage a continuing relationship between the child and each parent, as the following pertinent provisions establish:

> The general assembly finds and declares that it is in the best interest of all parties to encourage frequent and continuing contact between each parent and the minor children of the marriage after the parents

have separated or dissolved their marriage. In order to effectuate this goal, the general assembly urges parents to share the rights and responsibilities of child-rearing and to encourage the love, affection, and contact between the children and the parents.

§ 14–10–124(1), 6B C.R.S. (1987). However, the Code contains no similar provision or goal. To the contrary, the Code recognizes that the parent-child relationship may be terminated to further the best interests of the child. § 19–3–604, 8B C.R.S. (1995 Supp.).

■ The juvenile court's conclusion in this case that joint custody would serve the statutory purposes of the Act to encourage shared responsibilities of child-rearing and contact between children and their divorced parents does not encompass any determination of whether an order granting to both parents joint legal and physical responsibility for all three children would best serve each child's welfare and the best interests of society, § 19–1–102(1)(a), or preserve and strengthen family ties, § 19–1–102(1)(b).[4] In the absence of adequate findings of fact to resolve conflicting evidence, this court is unable to consider and apply the standards and purposes of the Code to resolve the issue of custody on appeal.

The juvenile court's order in this case erroneously described the father's motion as "Respondent Father's motion for joint legal and physical custody of all three minor children." The record before this court reveals that the only motion filed by the father in this dependency and neglect proceeding with respect to issues of custody is a verified Motion for

---

**4.** The juvenile court's order contains the following pertinent statements:

> [A]s permanent custody will be determined for the first time, it is the best interests of the child that must guide the court. *See 6B C.R.S 14–10–124 (1987 Repl. Vol.); see also, In re Marriage of Lester,* 791 P.2d 1244 (Colo.App.1990). The rights or wishes of either parent are not determinative, [citation omitted], and the goal of the provision—as specifically indicated by the legislature—is to "encourage frequent and continuing contact between each parent and

> the minor children of the marriage after the parents have separated or dissolved their marriage," and for parents to "share the rights and responsibility of child-rearing...." *See 6B C.R.S. 14–10–124(1).*
>
> In light of the aforementioned goal, it is clear that the best interests of the children are no longer being served by the temporary custodial arrangement. Respondent Mother has, at the very least, failed to encourage visitation and the development of a healthy relationship between the children and Respondent Father. (Footnotes omitted.)

Permanent Custody filed in the juvenile court on October 5, 1992, in which the father requested an award of permanent custody of all three children to him, subject to reasonable visitation by the mother. The mother filed a verified response to said motion on November 16, 1992, which response asserted, *inter alia*, that "[i]t is in the best interests of the children that permanent custody be granted to the [mother]." The juvenile court erred in assuming that it was determining a motion by the father for joint physical and legal custody.[5]

Furthermore, although the parties and witnesses who testified at the hearing expressed divergent viewpoints with regard to the appropriate placement of the three dependent and neglected children, no evidence was presented concerning the appropriateness of an award of joint custody and the juvenile court's limited findings of fact are insufficient to permit this court to determine whether an award of joint custody would be appropriate in view of the applicable provisions of the Code.

The few findings of fact entered by the juvenile court are primarily relevant to the provisions of the Act relied upon by the juvenile court. Assuming that such findings establish the fact that the mother's behavior has frustrated the Act's purpose to encourage children to communicate with both of their parents after the conclusion of dissolution proceedings, such findings do not establish that for purposes of the Code the best interests of the children of the parties would be served by an award of joint legal and physical custody to both disputing parents.

The juvenile court did not reconcile or resolve the divergent evidence concerning other important circumstances of the three children and their parents. The evaluation of such evidence is within the province and responsibility of the juvenile court. In view of that court's reliance upon erroneous legal standards and the absence of sufficient facts in its order to permit this court to apply the correct legal standard on appeal, the matter must be returned to the juvenile court for further proceedings.

V

For the foregoing reasons, we affirm the judgment of the court of appeals that the standards established by the Code are applicable to custody issues arising in dependency and neglect proceedings. However, we reverse the court of appeals' judgment affirming the juvenile court's order of joint custody and remand the case to the court of appeals with directions to vacate the juvenile court's custody order of August 22, 1993, and return the case to the juvenile court with directions to conduct further proceedings consistent with this opinion.[6]

---

5. The record before this court does not support a conclusion that either the father or the mother requested joint custody at any time. The district court's August 1, 1990, order transferring the issue of custody to the juvenile court reflects only that the father filed a Motion to Certify the Issue of Custody to the Juvenile Court of the City and County of Denver in the dissolution of marriage proceeding. In view of the evidence adduced at the July 9, 1993, hearing, any request for joint custody would directly contradict each party's strong conviction that the children's best interests would not be served if custody were granted to the opposing party.

6. We do not by this opinion intimate any particular resolution of the questions of custody raised in this strenuously contested proceeding.