24CA1659 Peo in Interest of RCML 06-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1659
City and County of Denver Juvenile Court No. 21JV92
Honorable Lisa Gomez, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of R.C.M.L. and R.M.L., Children,

and Concerning R.P.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Gomez and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 26, 2025

---

Katie McLoughlin, Acting City Attorney, Christina R, Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Counsel for Youth, Superior, Colorado, for R.C.M.L.

Josi McCauley, Guardian Ad Litem, for R.M.L.

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect action, R.P.M. (mother) appeals the judgment allocating parental responsibilities for R.C.M.L. (the youth) and R.M.L. (the child) to the maternal grandmother.  She contends that the juvenile court erred because it granted permanent custody of the youth and the child over her objection and "largely due to [her] residential and employment instability."  We disagree and affirm the judgment.

## I.     Background

¶ 2     Denver Human Services (the Department) filed a petition in dependency and neglect, alleging concerns about substance use and domestic violence in mother's home.  The juvenile court adjudicated the youth and the child dependent and neglected and adopted a treatment plan for mother requiring her to address substance dependence, mental health, and domestic violence.

¶ 3     The Department later moved to close the dependency and neglect action with an allocation of parental responsibilities (APR) to the maternal grandmother, with whom the youth and child had lived for three years.  Three and a half years after the petition was filed, the juvenile court awarded physical custody and decision-making to the maternal grandmother and awarded mother

1

unsupervised family time for four weeks during the school year and daily unsupervised virtual contact.

## II. Standard of Review and Applicable Law

¶ 4 The juvenile court has exclusive authority to determine the legal custody of, or enter an APR judgment with respect to, a child within its jurisdiction. § 19-1-104(1)(c), C.R.S. 2024; *L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1389 (Colo. 1996).

¶ 5 Allocating parental responsibilities is a matter within the sound discretion of the juvenile court. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *M.A.W. v. People*, 2020 CO 11, ¶ 32. "In weighing sufficiency of the evidence, we review the record in the light most favorable to the prevailing party and draw every inference fairly deducible from the evidence in favor of the court's decision." *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011). When there is record support for the juvenile court's findings, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15.

### III. Restriction of Parenting Time

¶ 6    Mother first contends that the juvenile court erred by restricting her parenting time. However, mother does not provide any reference to her own case in her recitation of the law related to this issue. Because mother's claim is "merely a bald assertion without argument or development," we will not consider it. *People in Interest of R.J.B.*, 2021 COA 4, ¶ 35.

### IV. Custody and Decision Making

#### A. The Juvenile Court's Grant of Custody and Decision-Making was Based on Mother's Failure to Engage in Services

¶ 7    Mother next contends that the juvenile court vested decision-making to the maternal grandmother "largely due to mother's residential and employment instability."

¶ 8    But the juvenile court's oral ruling makes clear this was not the case. The court told mother, "your housing and stability [are] not the hugest concern in this case for me. We have kids who live with parents in shelters all across Denver." The court went on to tell mother that its "biggest concern today and the compelling reason that I am granting the Department's motion for [an] APR is I

3

don't know what treatment you have done. I don't know that you have addressed" the issues that required the court's intervention.

¶ 9 The juvenile court granted an APR to the maternal grandmother and found, with record support, that mother failed to complete ordered treatment to address mental health, substance dependance, and domestic violence. At the hearing, the caseworker testified that in the three years she had worked with the family, mother was not consistently engaged in services. The caseworker testified that mother was discharged from three mental health and substance dependence treatment centers for non-attendance and disruptive behaviors. The caseworker further testified that, to the best of her knowledge, mother had never engaged in any services for domestic violence treatment, which were required under the terms of mother's probation.

¶ 10 The caseworker acknowledged that the youth and child did not want to return to mother's care because of her lack of stable housing. Mother also testified that she believed the Department's main concern was her lack of stable housing.

¶ 11 However, the caseworker opined that an APR was in the best interest of the youth and child not because of mother's housing

instability, but because of the Department's ongoing concerns about mother's untreated mental health and substance dependence. The caseworker testified that, although services had been established for mother through the Department and probation, mother had been discharged for "not being consistent" and for "her behaviors" with staff. The caseworker testified that she had not been able to confirm what was going on for mother recently in her treatment or services. Mother testified that she met with an individual therapist only three times in the year before the APR hearing, and that her meetings with clinical caseworkers and other service providers were "fluctuating with different people." Mother testified that she had not completed any domestic violence treatment.

¶ 12    Given this record, the juvenile court's decision to grant custody and decision-making to the maternal grandmother is not manifestly arbitrary, unreasonable or unfair

    B.    Mother Was Not Entitled to the *Troxel* Presumption

¶ 13    Mother next contends that the juvenile court's judgment granting custody and decision-making to a non-parent over her objection was "improper under *Troxel*."

¶ 14    Generally, a fit parent is presumed to act in the child's best interests. *Troxel v. Granville*, 530 U.S. 57, 68-69 (2000). However, this presumption is overcome by an order adjudicating a child or youth dependent and neglected. *People in Interest of N.G.*, 2012 COA 131, ¶ 33. After an adjudication, a parent may regain the *Troxel* presumption if the court finds that the parent complied with their treatment plan and demonstrated an ability to safely parent the children. *People in Interest of N.G.G.*, 2020 COA 6, ¶¶ 18-19.

¶ 15    But here, the juvenile court did not find that mother complied with her treatment plan, and did not find that mother regained fitness. Instead, the court found that, despite having a treatment plan in place "for a significant period of time," — more than three years — the court did not have a clear understanding of what mother had done to complete the treatment plan. In other words, the court found that mother had not completed her treatment plan or addressed the safety concerns that required state intervention. Under these circumstances, mother was not entitled to the *Troxel* presumption.

## C.  The Juvenile Court Made Sufficient Findings

¶ 16    Finally, citing *L.A.G.*, mother contends that the juvenile court erred by failing to make adequate findings or reference the purposes of the Children's Code in the APR judgment.  But mother's reliance on *L.A.G.* is misplaced.  In that case, "[t]he juvenile court relied solely on a limited number of the purposes" as articulated in the domestic relations code and did not "consider any purposes of the [Children's] code."  *L.A.G.*, 912 P.2d at 1392.  In contrast, here, the juvenile court did not rely on or even mention the domestic relations code.

¶ 17    When entering an APR judgment, the juvenile court must "be guided by the underlying purposes of the Code."  *Id.* at 1391.  Although the court must allocate parental responsibilities to best serve "the interests of the child and the public," § 19-3-507(1)(a), C.R.S. 2024, the Children's Code does not prescribe any specific factors the court must consider — or recite — in making its decision.  *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005).

¶ 18    The court found that granting an APR to the maternal grandmother was in the youth and child's best interests.  The court

made extensive oral findings explaining the compelling reasons why the youth and child could not be returned to mother's care and custody. While best practice would have incorporated these findings into the written order, the court's remarks, along with the written APR judgment, provide a sufficient articulation of the court's reasoning to permit appellate review as contemplated under *L.A.G.* C.f. *L.A.G.*, 912 P.2d at 1392 (concluding that reversal was required where the juvenile court "fail[ed] to articulate sufficient facts to permit appellate application of the appropriate legal standard").

¶ 19    We therefore discern no error.

## V.    Disposition

¶ 20    The APR judgment is affirmed.

JUDGE GOMEZ and JUDGE MEIRINK concur.