25CA0517 Peo in Interest of MSL 08-21-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0517
Arapahoe County District Court No. 24JV40
Honorable Bonnie H. McLean, Judge

The People of the State of Colorado,

Appellee,

In the Interest of M.S.L. and J.M.L, Children,

and Concerning G.S.W.,

Appellant,

and B.D.L.,

Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE TAUBMAN*
Fox and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

Ron Carl, County Attorney, Kiley Schaumleffel, Assistant County Attorney, Aurora, Colorado, for Appellee The People of the State of Colorado

Sheena Knight, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

James West, Office of Respondent Parents' Counsel, Longmont, Colorado, for Appellee B.D.L.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this dependency and neglect proceeding, G.S.W. (mother) appeals the juvenile court's judgment allocating parental responsibilities for M.S.L. and J.M.L. (the children) to B.D.L. (father). We affirm.

## I.    Background

¶ 2    The Arapahoe County Department of Human Services (the Department) received a referral that J.M.L. had tested positive for methamphetamines at birth. Mother entered into a safety plan with the Department, agreeing to (1) remain sober around the children; (2) submit to random drug testing; and (3) have supervised contact with the children. Three months later, after additional concerns arose regarding mother's sobriety and protective capacity, the Department sought and was granted temporary custody. The Department then filed a petition in dependency or neglect and placed the children with father. Shortly thereafter, the juvenile court granted father temporary custody. The children remained in father's custody throughout the case except for a four-week period when he was incarcerated.

¶ 3    The juvenile court adjudicated the children dependent and neglected and adopted a treatment plan for mother. Mother's

treatment plan required that she (1) work with the Department; (2) obtain and maintain housing and financial stability; (3) complete a mental health assessment and follow all treatment recommendations; (4) complete a substance use evaluation, follow all recommendations, and cooperate with random drug testing; (5) demonstrate protective parenting capacity; and (6) participate in consistent visitation with the children.

¶ 4    All parties agreed to set a contested hearing regarding an allocation of parental responsibilities (APR).  Following the hearing, the juvenile court granted father sole decision-making responsibility and primary residential care and awarded mother two days of supervised parenting time per month.

## II.    Applicable Law and Standard of Review

¶ 5    The Colorado Children's Code authorizes a juvenile court to enter an APR when it maintains jurisdiction in a case involving a dependent or neglected child.  § 19-1-104(5)-(6), C.R.S. 2024; *People in Interest of E.Q.*, 2020 COA 118, ¶ 10, 472 P.3d 1115, 1118.  When allocating parental responsibilities in a dependency and neglect proceeding, the juvenile court must consider the purposes of the Children's Code articulated in section 19-1-102,

2

C.R.S. 2024.  *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005).  The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served.  *L.G. v. People*, 890 P.2d 647, 654 (Colo. 1995).  As a result, when allocating parental responsibilities, the juvenile court must do so consistent with the child's best interests.  *L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1391 (Colo. 1996).

¶ 6     An APR is committed to the juvenile court's discretion.  *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15, 280 P.2d 78, 81.  A juvenile court abuses its discretion "when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law."  *People in Interest of E.B.*, 2022 CO 55, ¶ 14. 521 P.3d 637, 639.  It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses.  *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).  When the juvenile court's findings have record support, its resolution of conflicting evidence is binding on review.  *B.R.D.*, ¶ 15, 280 P.3d at 81.  But whether the court applied the correct legal

standard in making its findings is a question of law that we review de novo. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10, 459 P.3d 664, 667.

### III. Insufficient Findings

¶ 7  Mother's sole contention on appeal is that the juvenile court did not make adequate factual findings under the Children's Code to support the order. We disagree.

### A. Preservation

¶ 8  The Department and guardian ad litem assert that we should decline to address mother's appellate claim because it is unpreserved. However, we need not determine whether mother preserved her argument, or was required to do so, because even if we assume she did, we discern no basis for reversal.

### B. Analysis

¶ 9  Mother contends that the juvenile court erred by not making adequate findings or reference to the purposes of the Children's Code in the APR judgment. Specifically, citing *L.A.G.*, mother asserts that the court was required to make findings that the APR order would "best serve each child's welfare and the best interests of society" and "preserve and strengthen family ties." *See* § 19-1-

4

102(1)(a)-(b).  However, mother's reliance on *L.A.G.* is misplaced.[1]

In that case, "[t]he juvenile court relied solely on a limited number

of the purposes" articulated in the Uniform Dissolution of Marriage

Act (UDMA) and did not "consider any purposes of the [Children's]

Code."  *L.A.G.*, 912 P.2d at 1392.  In contrast, here, the juvenile

court did not rely on, or even mention, the UDMA.

¶ 10    When entering an APR judgment, the juvenile court must "be

guided by the underlying purposes of the Code."  *Id.* at 1391.

Although the court must allocate parental responsibilities to best

serve "the interests of the child and the public," § 19-3-507(1)(a),

C.R.S. 2024, the Children's Code does not prescribe factors the

court must consider — or recite — in making its decision, *C.M.*, 116

P.3d at 1281.

¶ 11    Here, the juvenile court found that, pursuant to sections 19-1-

104 and 19-3-702, C.R.S. 2024, of the Children's Code, the APR

was in the children's best interests.  In so finding, the court focused

---

[1] Mother's reliance on *Troxel v. Granville*, 530 U.S. 57 (2000), is similarly misplaced.  *Troxel* relates to proceedings between a fit parent and a nonparent, *see People in Interest of N.G.G.*, 2020 COA 6, ¶¶ 14-15, 459 P.3d 664, 667-68, whereas this case involved a fit parent and a parent the court determined was unfit.

on mother's inconsistent exercise of family time and its impact on the children. These findings are supported by the record.

¶ 12 The caseworker testified that she was concerned about mother's inconsistent contact with the children and her ability to meet their basic needs. The caseworker opined that ongoing supervision of mother's family time was necessary because mother (1) did not complete any drug testing in the caseworker's eleven months on the case; (2) admitted "continual" drug use a few months before the hearing; (3) failed to demonstrate sobriety or protective parenting capacity; and (4) did "not put any effort . . . into completing the components of her treatment plan that would be necessary for [the caseworker] to see [mother] as a fit and proper parent."

¶ 13 The court's oral ruling, along with the written APR judgment, sufficiently articulated the court's reasoning to permit appellate review. *Cf. L.A.G.*, 912 P.2d at 1392 (concluding that reversal was required where the juvenile court "fail[ed] to articulate sufficient facts to permit appellate application of the appropriate legal standard").

¶ 14    To the extent mother asserts that the APR was a "near-total restriction on [her] parental rights and responsibilities," and that the juvenile court did not make sufficient findings supporting such a restriction, we are not persuaded. Mother bases her argument solely on section 14-10-129, C.R.S. 2024 (governing modifications of parenting time in domestic relations cases). In so arguing, mother implies that the juvenile court was required to make endangerment findings before "restricting" her parenting time. However, Title 19, not Title 14, governs the juvenile court's allocation of parental responsibilities in a dependency and neglect proceeding. *See L.A.G.*, 912 P.2d at 1390 ("[T]he exclusive authority of a juvenile court to determine issues of child custody arising in the course of dependency and neglect proceedings is established by the [Children's] Code."). Endangerment findings are not required for the entry of an APR under Title 19. *See People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011) ("Because the adjudication of [the child] as dependent and neglected provided the predicate for the disposition entered, no finding concerning either unfitness or endangerment was necessary.").

¶ 15    We therefore discern no error.

7

## IV.  Disposition

The judgment is affirmed.

JUDGE FOX and JUDGE SCHUTZ concur.