116 P.3d 1278 (2005)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of C.M., a Child,
and Concerning G.M., Respondent-Appellant,
and M.J. and P.J., Special Respondents-Appellees.
No. 04CA1144.
Colorado Court of Appeals, Division A.
June 2, 2005.
*1280 George N. Monsson, County Attorney, David W. Bute, Assistant County Attorney, Fort Morgan, Colorado, for Petitioner-Appellee.
Dennis L. Brandenburg, Guardian Ad Litem.
Brad D. Redmiles, Salida, Colorado, for Respondent-Appellant.
Gagliano & Matuszczak, LLC, Stephanie M.G. Gagliano, Sterling, Colorado, for Special Respondents-Appellees.
Opinion by Chief Judge DAVIDSON.
In this dependency or neglect proceeding, G.M. (father) appeals from a judgment awarding permanent legal custody of his child, C.M., to the child's maternal grandfather and his wife, M.J. and P.J. (grandparents). We vacate the judgment and remand with directions.

I.
Intervention was required after R.J. (mother), who had sole custody of the child pursuant to a 1997 domestic relations case, failed to pick up the child from kindergarten and admitted to methamphetamine use. With mother's agreement, the county department of social services (department) filed a motion to place the child in the temporary physical and legal custody of the grandparents. The motion was granted by the trial court in October 2002.
Two weeks later, the department filed a petition in dependency or neglect, which named mother and father as respondents and the grandparents as special respondents. Following an adjudicatory trial in March 2003, the trial court sustained the petition, finding that the child lacked proper parental care through the acts or omissions of the parents and that the child's environment was injurious to his welfare. The child remained in the physical and legal custody of the grandparents, with protective supervision by the department.
Later in March 2003, a treatment plan was approved for father. The plan required that he (1) demonstrate financial independence and stability and contribute to the financial support of the child; (2) meet the requirements of his assessed child support arrears; (3) participate in parenting time with the child; (4) attend parenting classes; and (5) participate in a substance abuse evaluation and comply with any recommendations.
Father, who was living with his girlfriend and their children, reasonably complied with the treatment plan. To determine whether he could provide an appropriate, permanent home, physical and legal custody of the child was split between him and the grandparents in August 2003.
In December 2003, the department filed a motion to place legal and physical custody of the child with father, subject to protective supervision by the department. The motion, however, was withdrawn before it could be heard because father separated from his girlfriend, moved out of the home, and moved to another city.
Father's instability caused the department to file a motion seeking an award of legal custody to the grandparents in late December 2003. Several weeks later, the grandparents filed a petition for allocation of sole parental responsibility of the child. The department consented to the grandparents' motion and sought an order terminating its involvement with the family. In February 2004, the question of permanent legal custody was certified to the trial court by the district court that made the initial custody determination in 1997. See § 19-1-104, C.R.S. 1004.
By the time of the March 2004 custody hearing, father was unemployed, but had reconciled with his girlfriend, whom he considered his common law wife. Although the caseworker was concerned about father's recent use of marijuana and instability, she had no child welfare or safety concerns about his home.
Relying on §§ 19-1-102, 19-1-104, 19-1-115, and 19-3-508, C.R.S.2004, the trial court determined that an award of permanent legal custody to the grandparents was in the child's best interests. In reaching this conclusion, the trial court stated that it did not believe that father was unfit, but found that he was "unsuitable" to serve the best interests *1281 of the child. The latter finding was based on father's tendency to engage the child in adult matters, his unstable housing and employment, and his recent use of marijuana.

II.
Father challenges the facial constitutionality of the Colorado Children's Code (Code), § 19-1-101, et seq., C.R.S.2004, and in particular, §§ 19-1-102, 19-1-104, 19-1-115, and 19-3-508, on the basis that they do not require a showing of unfitness or endangerment before allowing an award of legal custody to a nonparent. Father did not make a facial attack on the Code or these provisions during the proceeding before the trial court. Therefore, we do not address his contention on appeal. See People v. Cagle, 751 P.2d 614 (Colo.1988); People v. Boyd, 30 P.3d 819 (Colo.App.2001) (refusing to address constitutional claims raised for the first time on appeal).

III.
Father also contends that the Code, and in particular §§ 19-1-102, 19-1-104, 19-1-115, and 19-3-508, are unconstitutional as applied. We conclude that these statutes are inapplicable and, thus, do not reach father's constitutional challenge.

A.
The Code provisions relied on by the trial court do not address or prescribe the standard for an award of permanent legal custody to a nonparent. Section 19-1-102 delineates the legislative purposes of the Code, which must be considered by a juvenile court in making a custody determination. L.A.G. v. People in Interest of A.A.G., 912 P.2d 1385, 1392 (Colo.1996). It does not, however, prescribe the criteria or standard upon which a custody determination must be made. Similarly, § 19-1-104 gives a juvenile court jurisdiction to determine the legal custody of a child who comes within its jurisdiction, but does not set forth the criteria or standard to be applied in making such an award.
Section 19-1-115 is a general provision concerning awards of temporary legal custody for determinate periods made during the pendency of any proceeding under the Code. Section 19-1-115(4), C.R.S.2004. It creates a custodial preference in favor of a grandparent, if in the best interests of the child, upon a finding that a suitable parent is not available. Section 19-1-115(1)(a), C.R.S.2004. It does not address the criteria or standard upon which an award of permanent legal custody may be made in a dependency or neglect proceeding.
Finally, § 19-3-508 sets forth dispositional alternatives for children who have been adjudicated dependent or neglected, including an award of legal custody to a parent, a relative, the department of social services, or a child placement agency. See § 19-3-508(1), C.R.S.2004. A dispositional order placing a child out of the home pursuant to § 19-3-508(1) is temporary and subject to periodic review by the juvenile court. Section 19-3-507(4), C.R.S.2004. The statute does not provide for an award of permanent legal custody to a nonparent.

B.
Short of termination of the parent-child legal relationship, see § 19-3-601, et seq., C.R.S.2004, the only Code provisions that address long-term permanency for children placed out of the home during the pendency of a dependency or neglect proceeding are §§ 19-3-702 and 19-3-703, C.R.S.2004. Section 19-3-703 provides that a child who is under the age of six when a petition is filed must be placed in a permanent home within twelve months of the initial out-of-home placement, unless the court determines that a permanent home is not in the child's best interests at that time. Although an award of permanent custody to a nonparent is included in the permanency options, § 19-3-703 does not set forth the standard to be applied in making such an award. Further, the statute is inapplicable here because the child was six years old when the petition was filed.
Section 19-3-702, the permanency hearing statute, provides for the adoption and implementation of a specific permanency plan for a child placed into foster care during *1282 the pendency of a dependency or neglect proceeding. Section 19-1-103(83.5), C.R.S. 2004; People in Interest of M.B., 70 P.3d 618, 623 (Colo.App.2003); Chief Judge Directive (CJD) 98-02, Memorandum of Procedures (MOP) § VII.A. Although the Code defines "foster care" as "the placement of a child into the legal custody or legal authority of a county department of social services for physical placement of the child in a certified or licensed facility," § 19-1-103(51.3), C.R.S.2004, the General Assembly has declared that long-term permanency planning is in the best interests of any child who has been removed from the home. Section 19-1-102(1.5)(a)(III), C.R.S.2004. Reading the Code as a whole and giving its provisions a consistent, harmonious, and sensible effect, we conclude that the General Assembly intended the permanency hearing statute to apply to all children placed out of the home, not only to those placed into foster care. See M.S. v. People, 812 P.2d 632 (Colo.1991); People in Interest of A.R.M., 832 P.2d 1093 (Colo.App.1992); People in Interest of T.R.W., 759 P.2d 768 (Colo.App.1988).
Pursuant to § 19-3-702(1), C.R.S.2004, a juvenile court must conduct a permanency hearing no later than twelve months after a child age six or older has been placed out of the home. At the hearing, the court must determine whether the child can be returned to the physical custody of a parent, and, if not, whether there is a substantial probability that the child can be returned within six months. Section 19-3-702(3), C.R.S.2004; People in Interest of A.W.R., 17 P.3d 192 (Colo.App.2000). If there is no substantial possibility of return to the home within six months,
the court shall enter an order determining the future status or placement of the child. Any court order regarding future status or placement of a child out of the home shall include specific findings concerning the placement goal for the child. . . . In cases in which the county department has documented to the court a compelling reason for determining that it would not be in the best interests of the child to return home, the court's findings shall include a determination of whether the placement goal for the child is that the child be referred for termination of parental rights, be placed for adoption, be placed with a fit and willing relative, be placed with a legal guardian or custodian, or be placed in another permanent living arrangement.
Section 19-3-702(4).
Here, the dependency or neglect proceeding had been pending for more than twelve months when the department filed its motion for an award of legal custody to the grandparents. Although the motion did not cite the legal basis on which it was premised, it sought a definitive, long-term decision regarding the child's permanent placement. See CJD 98-02, MOP § VII.B.3. Thus, the trial court should have applied § 19-3-702 in resolving the custody issue. Accordingly, we must remand the matter for reconsideration of the issue of permanent legal custody under § 19-3-702.

IV.
Because father's remaining contention is likely to arise on remand, we address it here.
Father contends that the trial court should have applied an unfitness standard, which would require awarding him permanent legal custody absent a finding of unfitness, rather than the best interests of the child standard in determining who should have permanent legal custody of the child. Father's argument is premised on Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), and People in Interest of A.W.R., supra. We conclude that a finding of unfitness is not required in order to decline to award a parent permanent legal custody in these circumstances.
The overriding purpose of the Code is to protect the welfare and safety of children by providing procedures through which their best interests can be served. L.G. v. People, 890 P.2d 647 (Colo.1995); see § 19-1-102. To this end, dependency or neglect proceedings focus primarily on the protection and safety of children susceptible to harm from the effect of abuse and neglect, not on the custodial interests of the parent. L.G. v. People, supra.
*1283 A dependency or neglect proceeding must be initiated by the filing of a petition by the state. McCall v. District Court, 651 P.2d 392 (Colo.1982). The petition must allege, in effect, that one or more aspects of the child's custodial situation are harmful to his or her health and welfare or to the interest of the public. L.A.G. v. People in Interest of A.A.G., supra; see §§ 19-3-201, 19-3-502, C.R.S.2004. To determine whether the factual allegations of the petition are supported by a preponderance of the evidence and whether the status of the child warrants protective or corrective state intervention into the family, an adjudicatory hearing must be conducted. People in Interest of A.M., 786 P.2d 476 (Colo.App.1989); see § 19-3-505(1), C.R.S.2004. If the petition is sustained, the juvenile court may enter an order of adjudication, which is not made "as to" the parents, but relates only to the status of the child. Section 19-3-505(7)(a), C.R.S.2004; People in Interest of C.T., 746 P.2d 56 (Colo.App.1987); People in Interest of P.D.S., 669 P.2d 627 (Colo.App.1983); see People in Interest of A.M., supra.
An order of custody may not be made until after a child has been adjudicated dependent or neglected. Section 19-3-507(1)(a), C.R.S.2004; L.A.G. v. People in Interest of A.A.G., supra. "Thus, a precondition to any determination of custody in a dependency and neglect proceeding is a judicial determination that the child's present custodial circumstances or other aspects of the child's present environment are detrimental to the child and, with government supervision, must be altered." L.A.G. v. People in Interest of A.A.G., supra, 912 P.2d at 1392.
When making a custody determination, a juvenile court must be guided by the purposes of the Code and resolve the issue in a manner that furthers the best interests of the child and the public. L.A.G. v. People in Interest of A.A.G., supra. Custody orders entered in the context of a dependency or neglect proceeding are a plan for permanency, subject to change as warranted by the best interests of the child, over which the juvenile court retains jurisdiction until the child is twenty-one years old. See § 19-3-205, C.R.S.2004; L.L. v. People, 10 P.3d 1271 (Colo.2000).
In Troxel v. Granville, supra, the Supreme Court held that a fit, natural parent has a first and prior right to custody and is presumed to act in the best interests of the child. This presumption, however, is based on the existence of a healthy parent-child relationship. See State ex rel. J.M.V., 958 P.2d 943 (Utah Ct.App.1998). See generally In re R.A., ___ P.3d ___, 2005 WL 774465 (Colo.App. No. 04CA0503, Apr. 7, 2005) (applying the presumption in a visitation dispute between fit adoptive parents and the child's paternal grandparents); In Interest of E.L.M.C., 100 P.3d 546 (Colo.App.2004) (applying the presumption in a custodial dispute between a fit adoptive parent and the child's psychological parent). Therefore, the presumption does not arise in the context of a dependency or neglect proceeding, which requires a judicial determination that the child's custodial circumstances or environment is injurious to his or her well-being before a custody order may be made. See L.A.G. v. People in Interest of A.A.G., supra.
Under the permanency statute, the department must establish a compelling reason why it is not in the child's best interests to return home before a trial court may award permanent custody of the child to a nonparent. Section 19-3-702(4). In People in Interest of A.W.R., supra, a division of this court held that the juvenile court properly applied a parental unfitness standard in determining whether a child could be returned home under the permanency statute. While parental unfitness clearly constitutes a compelling reason not to return a child home, we do not read A.W.R. as establishing a rule requiring an express finding of parental unfitness in every permanency determination. Instead, parental deficiencies less serious than unfitness may give rise to a compelling reason not to return the child home when considered in light of the child's physical, mental, and emotional conditions and needs.
Thus, under the dependency or neglect statutes, an award of permanent custody to a nonparent may be made even if a parent is not found to be unfit. Accordingly, *1284 on remand, the trial court shall determine the issue of permanent custody in accordance with § 19-3-702. In so doing, the trial court must be guided by the purposes of the Code and resolve the issue in a manner that furthers the best interests of the child and the public. L.A.G. v. People in Interest of A.A.G., supra.
Because of this disposition, it is unnecessary to address father's concern that, were this matter recertified as a domestic relations case, he would be required to show endangerment in order to obtain parental responsibility for his child.
The grandparents' request for attorney fees on appeal is denied. See C.A.R. 38(d); Wood Bros. Homes, Inc. v. Howard, 862 P.2d 925 (Colo.1993).
The judgment is vacated, and the case is remanded to the trial court for further proceedings consistent with the views expressed herein. The trial court may, in its discretion, conduct a new hearing. Until new orders are entered on remand, the trial court's current orders regarding permanent legal custody shall remain in effect. See In re Marriage of Martin, 42 P.3d 75 (Colo.App.2002).
Judge VOGT and Judge LOEB concur.