24CA2060 Peo in Interest of DG 05-29-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2060
Larimer County District Court No. 23JV30170
Honorable Laurie K. Dean, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of D.G., a Child,

and Concerning A.H.,

Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE MEIRINK
Freyre and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

---

William G. Ressue, County Attorney, Jennifer A. Stewart, Assistant II County Attorney, Fort Collins, Colorado, for Appellee

Sheena Knight, Counsel for Youth, Brighton, Colorado, for D.G.

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, A.H. (mother) appeals the judgment allocating parental responsibilities for D.G. (the youth) to A.G. (paternal aunt).[1]  We affirm.

## I.    Background

¶ 2    The Department received a referral that the youth's caregivers, mother and her significant other (B.H.), were in the hospital with gunshot wounds sustained in the home.  After meeting with the youth, mother, and B.H., the Department also had concerns about mother's substance use.  The Department filed a petition in dependency or neglect and placed the youth with B.H.'s mother.  However, after B.H. sexually abused the youth while in his mother's

---

[1] In her opening brief, mother contends that, based on the record, the Larimer County Department of Human Services (the Department) may not have substantially complied with the Indian Child Welfare Act (ICWA) with respect to the youth's possible Indian heritage through father, M.G.  Counsel for Youth disagrees and notes in the answer brief that the record shows that the Department complied with ICWA's requirements and there is no reason to believe the youth is an Indian Child under ICWA.  Because father is not a party to the appeal, mother does not raise ICWA compliance as a separate issue in the appeal, and we affirm the youth's placement with paternal aunt, which constitutes preferred placement under ICWA, *see* 25 U.S.C. §1915(b)(i), 2024, we do not address ICWA compliance in our opinion.

home, the Department removed the youth and placed her with paternal aunt, where she remained for the duration of the case.

¶ 3    The juvenile court adjudicated the youth dependent and neglected and adopted a treatment plan for mother.  Among other things, mother's treatment plan required her to (1) complete a substance abuse assessment and follow any recommendations for treatment; (2) complete substance testing as requested by the Department; (3) demonstrate an ability to provide for the youth's physical, medical, emotional, and mental health needs; (4) participate in a healthy relationship program; and (5) complete trauma-informed parenting education.

¶ 4    Several months later, the Department moved for an allocation of parental responsibilities (APR) to paternal aunt.  Following a contested hearing, the juvenile court granted the Department's motion, awarding sole decision-making responsibility to paternal aunt and four hours of supervised parenting time every Sunday to mother.  The court also ordered that, after three months of consistent parenting time and individual therapy for the youth, the youth and mother should begin family therapy.

## II.  Applicable Law and Standard of Review

¶ 5     The Colorado Children's Code authorizes a juvenile court to enter an APR when it maintains jurisdiction in a case involving a youth who is dependent and neglected.  § 19-1-104(5)-(6), C.R.S. 2024; *People in Interest of E.Q.*, 2020 COA 118, ¶ 10.  When doing so, a juvenile court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2024.  *See People in Interest of A.S.L.*, 2022 COA 146, ¶ 12.  The overriding purpose of the Children's Code is to protect a youth's welfare and safety by providing procedures through which the youth's best interests can be served.  *L.G. v. People*, 890 P.2d 647, 654 (Colo. 1995).  Consequently, the court must allocate parental responsibilities in accordance with the youth's best interests.  *L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1391 (Colo. 1996).

¶ 6     Allocating parental responsibilities is a matter within the sound discretion of the trial court.  *In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.  It is for the court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses.  *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010); *see*

3

*also B.R.D.,* ¶15 (when there is record support for the court's findings, its resolution of conflicting evidence is binding on review). But whether the court applied the correct legal standard in making its findings is a question of law that we review de novo. *People in Interest of N.G.G.,* 2020 COA 6, ¶ 10.

### III.   Reasonable Efforts

¶ 7    Mother first contends that the juvenile court erred by entering an APR because the Department failed to make reasonable efforts to reunify the family. Specifically, mother asserts that family therapy was "absolutely necessary" and a "required service" the Department should have provided. We disagree.

¶ 8    Before a juvenile court may grant an APR to a nonparent, a county department must make reasonable efforts to prevent out-of-home placement and reunify the family whenever appropriate. *See A.S.L.,* ¶ 20; §§ 19-1-103(114), 19-3-100.5(1), 19-3-208(1), C.R.S. 2024. Reasonable efforts means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114). Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard. § 19-1-103(114). Among the services required under section 19-3-208 are screenings, assessments, and

individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services; and placement services.  § 19-3-208(2)(b).

¶ 9  In assessing a department's efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.

¶ 10  Whether a department satisfied its obligation to make reasonable efforts to rehabilitate a parent and reunify the family is a mixed question of law and fact.  *A.S.L.*, ¶ 8.  We review the juvenile court's factual findings for clear error but review de novo its legal determination whether the Department satisfied its reasonable efforts obligation.  *Id.*

¶ 11  The juvenile court considered mother's arguments about family therapy but found it was not clear that family therapy was

5

therapeutically appropriate for the youth at that time. Therefore, the court concluded, the lack of family therapy was not a Departmental failure to meet its reasonable efforts obligation.

¶ 12 The record supports these findings. Due to the youth's expressed concerns about mother's potential response to the information she provided in a trauma assessment, the assessor indicated that the youth may not feel safe in family therapy until she knew she was in a permanent situation. The assessor opined that the youth might worry about repercussions stemming from family therapy. Similarly, the caseworker testified that, because the youth expressed fear that her statements in therapy may cause another placement change, permanency would give the youth the ability to fully express herself. Based on mother's requests for family therapy, the caseworker also spoke with the youth's therapist who reported that the youth was "extremely withdrawn and uncomfortable" with therapy and needed more time in individual therapy before she would be ready for family therapy. Therefore, the caseworker determined family therapy was not yet appropriate for the youth. *See My.K.M.*, ¶ 33 (A department has "discretion to prioritize certain services or resources to address a family's most

pressing needs in a way that will assist the family's overall completion of the treatment plan.").

¶ 13    True, as mother asserts, the youth acknowledged it would be helpful to have difficult conversations with mother in the presence of someone who could help mother understand the youth's feelings. However, the expert in visitation supervision testified that this level of comfort from the youth was a "relatively recent" development. Even so, the caseworker submitted a referral for therapeutic supervision, in part, to give the youth an opportunity to ask in-depth questions of mother. But the agency had not been able to reach mother to schedule visits. *See People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011) (the parent is ultimately responsible for utilizing the services provided).

¶ 14    Based on the foregoing, we discern no error in the juvenile court's determination that the Department made reasonable efforts to reunite mother with the youth.

## IV.    Lack of Compelling Reasons

¶ 15    Mother next contends that the juvenile court erred by finding that there was a compelling reason to not return the youth home. Specifically, she contends that any lack of progress in rebuilding

the youth's relationship with her was due to the Department's failure to provide reasonable efforts. We disagree.

¶ 16 A juvenile court must also determine that a compelling reason exists not to return the youth to their parents before granting an APR to a nonparent. *See People in Interest of C.M.*, 116 P.3d 1278, 1283 (Colo. App. 2005) ("Under the permanency statute, the department must establish a compelling reason why it is not in the [youth's] best interests to return home before a trial court may award permanent custody of the [youth] to a nonparent."). Though a parent's unfitness could be a compelling reason not to return a youth home, a finding that a parent is unfit is not required. *Id.* Thus, courts should focus on the youth's needs in addition to the strengths or deficiencies of the parent. *People in Interest of M.D.*, 2014 COA 121, ¶ 43.

¶ 17 The juvenile court concluded that there were compelling reasons not to return the youth home to mother. The court focused on the youth's need for consistency and certainty as well as mother's continued alcohol use and contact with B.H. The court found that the case began with a dangerous situation while mother was intoxicated, and concerns remained about mother's continued

alcohol use. The court further found that mother's continued contact and interdependency with B.H. was problematic both from a protective safety perspective and because of its "ripple effects" on the youth's emotional and mental health.

¶ 18   The record supports these findings. The virtual family time supervisor, paternal aunt, and caseworker all testified about the youth's need for stability. The caseworker explained that the youth had experienced two prior dependency and neglect cases and numerous placement changes. She testified that the youth consistently expressed that "this keeps happening" and that she doesn't "want this to happen again." The caseworker noted these concerns impacted the youth's personal relationships, education, mental health, and stability. For example, the youth told the caseworker that she did not want to make friends or fully engage because she feared being moved again. As discussed above, the caseworker opined that giving the youth permanency would allow her to make therapeutic progress.

¶ 19   The caseworker also testified about concerns related to mother's substance use including (1) reports that she continued to consume alcohol; (2) her failure to promptly engage in substance

testing at the Department's request; and (3) her overall lack of consistent testing. The caseworker expressed concern regarding mother's failure to acknowledge her use of alcohol and its impact on the youth. While mother admitted alcohol had been an issue for her in the past, she insisted she had not consumed alcohol since the case began. However, considering all the evidence, the juvenile court believed there was cause for concern. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29 (recognizing that we may not reweigh the court's resolution of conflicting evidence).

¶ 20    Finally, the Department presented evidence through mother's cousins, whom the juvenile court found to be credible, as well as the caseworker, that mother continued to have contact with B.H. even after the incident with the youth. While mother admitted she had some phone calls with B.H., she claimed the conversations focused on financial matters and concerns regarding the caseworker. Regardless of the topic of conversation, as the caseworker opined, mother's continued contact with B.H. indicated she prioritized that communication over the youth's response or feelings to B.H. being in her life.

¶ 21    Viewed comprehensively, the juvenile court concluded these concerns established a compelling reason, considering the youth's physical, mental, and emotional conditions and needs, for her not to be returned to mother's care.  *See M.D.*, ¶ 43.  Because the evidence supports the court's conclusion, we discern no error.

## V.    Disposition

¶ 22    The judgment is affirmed.

JUDGE FREYRE and JUDGE GOMEZ concur.