24CA1830 Peo in Interest of IA 07-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1830
City and County of Denver Juvenile Court No. 23JV30663
Honorable Laurie A. Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of I.A., a Child,

and Concerning S.A.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE WELLING
Lum and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

---

Katie McLoughlin, Acting City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem.

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     S.A. (mother) appeals the juvenile court's judgment allocating parental responsibilities for I.A. (the child) to maternal grandparents. We affirm.

## I.     Background

¶ 2     The Denver Department of Human Services filed a petition in dependency or neglect based on substance abuse and medical and emotional neglect. Temporary custody of the child was granted to the maternal grandparents.

¶ 3     The court adjudicated the child dependent or neglected, and mother appealed. A division of this court affirmed the child's adjudication. *See People in Interest of I.E.A.*, (Colo. App. No. 24CA0997, Nov. 27, 2024) (not published pursuant to C.A.R. 35(e)).

¶ 4     The court adopted a treatment plan for mother, which required her to (1) attend parenting time; (2) complete a dual mental health and substance abuse evaluation and comply with any recommendations; (3) comply with sobriety testing; and (4) maintain safe and appropriate housing. Three months later, the child's guardian ad litem (GAL) moved to allocate parental responsibilities (APR) to maternal grandparents.

1

¶ 5 Following a contested APR hearing, the court awarded maternal grandparents sole decision-making responsibility, made them the child's primary custodian, and set forth a parenting time schedule for mother.

## II. Due Diligence Under ICWA

¶ 6 Mother asserts that "it is unclear whether the government complied with its due diligence requirement" to gather additional information after she reported that the child may have an uncle who has Sioux heritage.

¶ 7 Dependency and neglect cases are subject to the provisions of the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963, and Colorado's ICWA statute, § 19-1-126, C.R.S. 2024. Under section 19-1-126(3), when a juvenile court "receives information that the child may have Indian heritage but does not have sufficient information to determine that there is a reason to know that the child is an Indian child . . . the court shall direct the [petitioner] to exercise due diligence in gathering additional information that would assist the court" in determining whether it has reason to know the child is an Indian child. Due diligence is a flexible standard that doesn't require a department to "succeed in

2

its efforts or exhaust every possible option in attempting to do so." *H.J.B. v. People in Interest of A-J.A.B.*, 2023 CO 48, ¶ 58.

¶ 8 Whether a department satisfied its due diligence obligation is left to the juvenile court's sound discretion. *Id.* A court abuses its discretion when "its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *People in Interest of E.R.*, 2018 COA 58, ¶ 6.

¶ 9 Mother reported that the child had potential Sioux heritage, and the Department attempted to contact numerous relatives to gather more information. The caseworker spoke with mother, maternal grandmother, and two maternal uncles. The Department received no more information with regard to the child's enrollment or eligibility to enroll with any tribe. Having received no information confirming mother's assertion of potential Sioux heritage or identifying heritage through any other tribe, the Department didn't send notices. After considering these efforts, the court determined that it had no reason to know that the child was an Indian child. *See People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42, ¶ 56 (a mere assertion of Native heritage, without more, is insufficient to give the juvenile court reason to know that a child is an Indian child).

¶ 10    Because the court's findings are supported by the record, we discern no abuse of discretion.  *H.J.B.*, ¶¶ 54, 58.

### III.    Reasonable Efforts

¶ 11    Mother argues that the juvenile court erred when it determined that the Department made reasonable efforts to rehabilitate her and reunify the family.  The Department and GAL assert that mother didn't adequately preserve her reasonable efforts argument.  We agree that the issue isn't preserved; therefore, we won't review it.  *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 (Appellate courts will "review only issues presented to and ruled on by the lower court.").

### A.    Relevant Law

¶ 12    The issue of whether a department made reasonable efforts relates to a parent's fitness in the context of a hearing on a motion for termination of parental rights under section 19-3-604(1)(c).  The termination statute states that, in deciding whether a parent is unfit, the court "shall consider," among other things, whether "[r]easonable efforts by child-caring agencies . . . have been unable to rehabilitate the parent or parents."  § 19-3-604(2)(h).  But this statute isn't applicable to an APR, and a juvenile court isn't

required to make a finding of parental unfitness when awarding permanent legal custody, such as an APR. *See L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1391-92 (Colo. 1996); *cf. People in Interest of A.S.L.*, 2022 COA 146, ¶ 20 (relying on section 19-3-100.5, C.R.S. 2024, which sets forth policies underlying dependency and neglect proceedings, and concluding that a department must make reasonable efforts in a dependency or neglect case before a nonparent).

¶ 13     To preserve an issue for appellate review, a party must alert the juvenile court to the issue so that the court has an adequate opportunity to make findings of fact and conclusions of law. *Forgette v. People*, 2023 CO 4, ¶ 21. But a party isn't required to use talismanic language to preserve an issue for appeal. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 18.

## B.     Analysis

¶ 14     In an effort to show preservation, mother points to statements, in transcripts from hearings both before and at the APR hearing, in which mother's counsel or mother questioned the sufficiency of services provided to her. These statements included arguments that mother's family time with the child was insufficient and that

5

the Department failed to help mother enroll in a sober living facility, refer mother for urinalysis testing, or provide her with financial assistance for housing or transportation. But neither mother nor her counsel formulated these arguments in terms of reasonable efforts before the trial court, nor did they ask the court to deny the APR because of a lack of reasonable efforts. *See Forgette*, ¶ 23 ("Merely calling an issue or fact to the court's attention, without asking for relief, is insufficient to preserve an issue for review.")

¶ 15    Moreover, during closing argument at the APR hearing, mother's counsel didn't assert that the Department had failed to make reasonable efforts. Instead, mother's counsel's closing argument reviewed each objective of her treatment plan, focusing on mother's alleged compliance and success. Ultimately, the court granted the Department's APR motion without making specific findings as to whether the Department had made reasonable efforts. When the court asked the parties if they needed any clarifications regarding its order, no party requested any clarification.

¶ 16    Based this review of the record, it's clear to us that mother never presented the issue of the adequacy of the Department's efforts as a basis for denying the APR. And this isn't just a matter

6

of not using talismanic language; the issue wasn't raised in the context of allocating parental responsibilities.  Based on this, it's unsurprising that the juvenile court didn't make any reasonable efforts finding.  And because the issue wasn't raised, we won't review mother's contention that the court's failure to make reasonable efforts findings is a basis for reversing the court's APR order.

## IV.  Time to Comply

¶ 17     Mother also argues that the juvenile court erred by not giving her more time to comply with her treatment plan before allocating parental responsibilities.  We disagree for two reasons.

### A.  No Entitlement to Reasonable Time

¶ 18     First, we aren't persuaded that mother was entitled to reasonable time before the juvenile court allocates parental responsibilities.  Mother relies on *People in Interest of D.Y.*, 176 P.3d 874, 876-77 (Colo. App. 2007), to assert that the juvenile court had to give her reasonable time to comply with her treatment plan and become fit before it could enter an APR.

¶ 19     Mother's reliance on *D.Y.* is misplaced because section 19-3-604(1)(c) isn't applicable in the present case.  *See People in Interest*

7

*of S.Z.S.*, 2022 COA 133, ¶¶ 32-33 ("[T]he requirement that a court allow a parent a reasonable time to comply with a treatment plan only applies in cases in which parental rights are terminated under subsection (1)(c)."). Moreover, a juvenile court can enter an APR in a dependency and neglect case without first adopting a treatment plan. *See People in Interest of T.W.*, 2022 COA 88M, ¶ 35 (noting that, once the court enters an adjudication, it has access to broad dispositional remedies, including the authority to enter permanent APR orders). Therefore, mother wasn't entitled to a reasonable time to comply with her treatment plan before the court entered an APR. *See id.* In any event, mother's contention that she wasn't afforded reasonable time to comply with her treatment plan isn't a basis for reversing the APR order.

### B. Child's Emotional Conditions and Needs

Second, mother's argument that she should have been given more time is also unavailing based on the child's physical, mental, and emotional conditions and needs, which the juvenile court properly gave primary consideration. While unfitness "clearly constitutes a compelling reason not to return a child home," in an APR, parental challenges less serious than unfitness may give rise

to a compelling reason not to return the child home when considered in light of the child's physical, mental, and emotional conditions and needs. *People in Interest of C.M.*, 116 P.3d 1278, 1283 (Colo. App. 2005). Therefore, the fact that a parent may become fit in a reasonable time isn't dispositive of whether an APR is in the child's best interest, particularly if there are other compelling reasons not to return a child to the parent.

¶ 21 Here, the court concluded, with record support, that mother resisted engagement with her treatment plan and was thus unable to overcome the concerns that brought the family to the Department's attention. For example, although the caseworker referred mother to a substance abuse evaluation, mother informed the caseworker she wouldn't complete it, and she didn't engage in any Department-sponsored substance abuse treatment. Mother claimed to be in mental health treatment independently, but she never provided a release for the Department to confirm her attendance. She submitted only two urinalysis tests in the thirteen months this case was open. Despite mother's arguments that she was compliant with her treatment plan, we can't reweigh the evidence or substitute our judgment. *See People in Interest of*

*K.L.W.*, 2021 COA 56, ¶ 62; *see also People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

¶ 22     Based on the juvenile court's well-supported findings, giving mother more time would have been detrimental to the child's well-being. While this case was open, the child's emotional health deteriorated. For example, the child expressed fear about strangers "coming in and out of [mother's] home as well as staying there." And later, when mother's visits became supervised due to her lack of compliance with her treatment plan, the child experienced two psychiatric emergencies requiring hospitalization. Providing mother with more time to comply with her treatment plan would have been at odds with supporting the child's emotional well-being.

V.     No Procedural Due Process Violation

¶ 23     Next, we aren't persuaded that there was any procedural due process violation. When a court decision effectively eliminates or weakens familial bonds by terminating parental rights or denying custody, parents must first receive fundamentally fair procedures. *Santosky v. Kramer*, 455 U.S. 753 (1982); *People in Interest of D.I.S.*, 249 P.3d 775, 781-82 (Colo. 2011). Thus, in termination proceedings, due process requires that a parent be given notice of

the proceeding and an opportunity to be heard or defend and have the assistance of legal counsel. *People in Interest of V.M.R.*, 768 P.2d 1268, 1270 (Colo. App. 1989). Arguably, not all of these protections apply in an APR proceeding because a parent retains other rights, including the right to petition or regain custody or to increase parenting time. *See, e.g., People in Interest of L.B.*, 254 P.3d 1203, 1206 (Colo. App. 2011) (where the state seeks only to award custody of a child to other persons rather than to terminate parental rights, a parent has no due process right to counsel).

¶ 24    Here, however, we don't need to decide what due process protections apply at an APR proceeding because mother had all the procedural due process she was entitled to had this been a termination proceeding, including court-appointed counsel, being provided with notice of the hearing, and having the opportunity to be heard and defend against the APR motion.

## VI.    APR Is In Child's Best Interest

¶ 25    Finally, mother argues that the court erred in concluding that the APR was in the child's best interests. Specifically, she argues that the APR wasn't in the child's best interest because (1) the open case allowed maternal grandparents access to services they couldn't

otherwise receive; and (2) the APR improperly "conditioned any expansion of [family] time . . . on [m]other completing substance abuse treatment and mental health therapy." Again, we perceive no basis for reversal.

## A. Relevant Law and Standard of Review

When a juvenile court allocates parental responsibilities in a dependency or neglect case, it must consider the purposes of the Children's Code under section 19-1-102, C.R.S. 2024, *see People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005), and allocate parental responsibilities in accordance with the child's best interests, *see L.B.*, 254 P.3d at 1208. But the Children's Code doesn't delineate any specific criteria for, or direct the court to make any specific findings before entering an APR.

An APR judgment is within the juvenile court's discretion and won't be disturbed on review if it is supported by competent evidence in the record. *See People in Interest of A.M.K.*, 68 P.3d 563, 565 (Colo. App. 2003). However, whether the court applied the correct legal standard in making its findings is a question of law that we review de novo. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10. The credibility of the witnesses and the sufficiency, probative

effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are matters within the court's discretion. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.

### B. Analysis

¶ 28 The court found that keeping this case open wasn't in the child's best interest, because "having multiple decision-makers in the case [was] impacting [the child's] mental health in a significant way." As we have already discussed, the record shows that the child's mental health was negatively impacted by the case proceedings; the caseworker's testimony supports the court's finding that keeping the child with his maternal grandparents was in his best interest.

¶ 29 The record shows that the case closure wouldn't affect maternal grandparents' access to the type of service they requested. Shortly before the APR hearing, maternal grandparents requested a service, known as KEEP. According to the caseworker, KEEP works in the home of the child and caregiver and teaches de-escalation strategies. The caseworker testified that, in this case, KEEP provided the same services as family therapy. And family therapy would have been available to maternal grandparents if mother —

who had been the child's medical decision-maker — had allowed maternal grandparents and the child to participate in it. At the APR hearing, the court awarded maternal grandparents medical decision-making authority for the child. Given the court's order, the child and maternal grandparents no longer required the case to remain open in order to receive equivalent services through family therapy.

¶ 30    The court awarded mother a minimum of eight hours of monitored family time weekly, without condition. The court also contemplated an expansion of her family time in the future that carried conditions: mother's family time could expand "based on [m]other's successful completion of substance use treatment and engagement in mental health therapy." To the extent mother disagrees with those conditions for future parenting time, she can seek to modify the judgment in the district court. *See* § 14-10-129(1)(a)(I), C.R.S. 2024 (allowing district court to modify parenting time "whenever such order or modification would serve the best interests of the child"). And nothing in section 14-10-129 limits a parent's ability to file an initial motion to modify parenting time. *See In re F.A.G.,* 148 P.3d 375, 377 (Colo. App. 2006) (the two-year

limitation in section 14-10-129(1.5) doesn't apply to "the first motion to modify parenting time filed after the permanent orders have been entered"). Accordingly, because the court found, with record support, that the conditions it imposed on mother's future parenting time in the APR judgment were in the child's best interests, the court didn't error.

## VII. Disposition

¶ 31    The judgment is affirmed.

JUDGE LUM and JUDGE BERNARD concur.