25CA0660 Peo in Interest of JCE 10-30-2025

COLORADO COURT OF APPEALS

___

Court of Appeals No. 25CA0660
Arapahoe County District Court No. 23JV30071
Honorable Bonnie H. McLean, Judge

___

The People of the State of Colorado,

Appellee,

In the Interest of J.C.E., a Child,

and Concerning D.W.E.,

Appellant.

___

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE KUHN
Dunn and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

___

Ron Carl, County Attorney, Sylvia Geiger, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Counsel for Youth, Brighton, Colorado, for J.C.E.

Ainsley E. Baum, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency or neglect action, D.W.E. (mother) appeals the juvenile court's judgment allocating parental responsibilities for J.C.E. (the child) to D.E., the child's adult brother (brother).  We affirm in part, reverse in part, and remand the case for further proceedings.

I.    Background

¶ 2    The Arapahoe County Department of Human Services filed a petition in dependency or neglect, alleging concerns about mother's ability to care for the child.  The Department also had concerns about mother's ability to provide for the child's medical and educational needs.

¶ 3    The juvenile court adjudicated the child dependent or neglected and entered a treatment plan for mother.  The child remained with mother at that time.

¶ 4    About four months later, the child was hospitalized with a wrist injury.  The hospital refused to discharge the child to mother because hospital staff were concerned about the child's and mother's safety.  The Department obtained a verbal removal order and placed the child with brother where he remained for the remainder of the case.

¶ 5    The Department then moved for an allocation of parental responsibilities (APR) and filed a proposed APR.  Mother opposed the Department's proposal and filed her own proposed APR.

¶ 6    After a contested hearing, the juvenile court adopted and entered a mostly unaltered version of the Department's proposed APR order.

## II.    Analysis

¶ 7    Mother contends that the juvenile court erred by improperly delegating decisions concerning parenting time to brother. Additionally, mother advances several arguments challenging the Department's reasonable efforts, her fitness, her treatment plan compliance, the juvenile court's restrictions on parenting time, and the juvenile court's best interests findings.  We address each in turn.

### A.    Standard of Review

¶ 8    Allocating parental responsibilities is a matter within the juvenile court's discretion.  *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication of the law.  *People in Interest*

2

*of M.W.*, 2022 COA 72, ¶ 12.  As the trier of fact, the juvenile court assesses the credibility of witnesses and determines the sufficiency, probative effect, and weight of the evidence, *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010), and when its findings have record support, we will not disturb them on review, *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.  But we review de novo whether the court applied the correct legal standard in making its findings.  *Id.*

### B.    Delegation of Parenting Time

¶ 9    Mother first contends that the juvenile court erred by improperly delegating decisions concerning her parenting time to brother.  We agree.

### 1.    Relevant Law

¶ 10    The juvenile court is authorized to determine the legal custody of a child who comes within its jurisdiction, *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005), and when allocating parental responsibilities, it must do so in accordance with the child's best interests, *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011).

¶ 11    Questions about a child's health and safety, including family time decisions, are entrusted to the juvenile court's discretion. *People in Interest of D.G.*, 140 P.3d 299, 302 (Colo. App. 2006). Because the court itself must make those decisions, it cannot delegate family time decisions to a third party. *See id.*; *People in Interest of B.C.*, 122 P.3d 1067, 1070-71 (Colo. App. 2005) (holding that the juvenile court cannot delegate family time decisions to others); *see also In re Marriage of Elmer*, 936 P.2d 617, 621 (Colo. App. 1997) (prohibiting the district court from delegating to the child's psychiatrist the decision of when overnight visits can occur).

### 2. The Juvenile Court Erred by Permitting Brother to Modify Mother's Family Time

¶ 12    As relevant here, the juvenile court ordered that brother can "cancel a visit if [brother] determines that it is not [in the child's] best interest based on [m]other's behaviors." The court further ordered that "[a]dditional time may be allowed at the discretion of [brother]."

¶ 13    The Department and the counsel for youth argue that the court could delegate its authority over parenting time to brother in this case because "evidence indicates that the parties are able to

4

cooperate." *See In re Marriage of Tibbetts*, 2018 COA 117, ¶ 25. However, the record contradicts the premise that the parties are willing and able to cooperate on parenting time decisions. The caseworker testified that communication between mother and brother "is incredibly strained" and that "[t]hey do not have a good relationship." The caseworker also expressed concerns about mother's parenting time due to her contentious relationship with brother. Brother further testified that his relationship with mother is "never a good one" and that he believed she is "a sorry mother." Brother also withheld mother's court ordered parenting time after a conflict with mother just a week before the contested hearing.

¶ 14 Therefore, the court erred by delegating to brother the discretion to deny and expand mother's parenting time. *See Id.* at ¶ 25 ("[A] general parenting time order that leaves the specific parameters of a parent's time to the parents to work out together" constitutes an abuse of discretion "if the parents are not able to cooperate."). Accordingly, we reverse the parenting time provision of the APR judgment and remand the case for the juvenile court to determine parenting time.

## C.    Reasonable Efforts

¶ 15    Mother argues that the juvenile court erred by entering the APR judgment because the Department failed to make reasonable efforts to reunite her with the child.  We disagree.

### 1.    Relevant Law and Standard of Review

¶ 16    A department of human services has a statutory obligation to provide reasonable efforts to reunify the family when the juvenile court enters an APR to a nonparent.  *People in Interest of A.S.L.*, 2022 COA 146, ¶ 20; §§ 19-1-103(114), 19-3-100.5, 19-3-208(1), 19-3-604(2)(h), C.R.S. 2025.  Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard.  *See* § 19-1-103(114).  Among the services required by section 19-3-208 are screening, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services; visitation services for parents with children in out-of-home placement; and placement services including foster care and emergency shelter.  § 19-3-208(2)(b).

¶ 17    To evaluate whether a department made reasonable efforts, the court should consider whether the services provided were appropriate to support the parent's treatment plan.  *People in*

*Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).  But a department has "discretion to prioritize certain services or resources to address a family's most pressing needs in a way that will assist the family's overall completion of the treatment plan." *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.  Whether a department has made reasonable efforts "must be measured holistically rather than in isolation with respect to specific treatment plan objectives."  *Id.* at ¶ 35.

¶ 18　　The parent is ultimately responsible for using the services provided to obtain the assistance they need to comply with the treatment plan.  *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).  The court may therefore consider a parent's unwillingness to participate in treatment when determining whether a department made reasonable efforts.  *People in Interest of E.D.*, 2025 COA 11, ¶ 12.

¶ 19　　Whether a department has satisfied its obligation to make reasonable efforts to reunify the family is a mixed question of fact and law.  *A.S.L.*, ¶ 8.  We review the juvenile court's factual findings related to reasonable efforts for clear error but review de novo the

court's legal determination, based on those findings, as to whether a department satisfied its reasonable efforts obligation. *Id.*

### 2. The Juvenile Court Did Not Err by Finding the Department Made Reasonable Efforts

¶ 20    The juvenile court found that the Department made reasonable efforts to rehabilitate mother. The record supports the court's findings.

¶ 21    First, the Department's obligation to provide reasonable efforts to mother did not arise until the child was removed from her care roughly four months before the contested APR hearing. *See* § 19-3-100.5(1) (noting federal law requires the state to "make a commitment to make 'reasonable efforts' to prevent the placement of abused and neglected children *out of the home*" (emphasis added)).

¶ 22    Even so, the record shows it was mother's unwillingness to cooperate that prevented her from accessing necessary services. *See E.D.,* ¶ 12. Mother argues that the Department should have helped her clean up her home, repair her broken appliances, and obtain the child's medical information. However, by the time the Department was required to provide reasonable efforts, mother

refused to speak to the caseworker. The caseworker testified that this lack of communication impacted the Department's ability to help with services.

¶ 23 Mother also argues that the Department failed to help the child re-enroll and receive services from a program that specializes in providing support for children and adults with disabilities. However, the record shows that the program disenrolled the child after program staff struggled to engage with mother "for a number of months." While mother attempted to contact program staff the month before the child's disenrollment, the program's staffing changes prevented her from re-enrolling the child at that time. Nevertheless, the Department tried to re-enroll the child as soon as it learned the child had been disenrolled. At the time of the contested hearing, the child was on a waiting list to receive services.

¶ 24 Finally, while mother argues generally that the Department should have provided additional services and referrals, she does not identify what services or referrals should have been provided.

¶ 25 Given this record, we will not disturb the juvenile court's findings that the Department made reasonable efforts.

### D. Fitness, Treatment Plan Compliance, and Restrictions on Parenting Time

¶ 26    Mother argues that the juvenile court erred by granting the APR judgment to brother because, she asserts, she was a fit parent and substantially complied with her treatment plan.  She further argues that the court unduly restricted her parenting time.[1]  We discern no reversible error.

### 1. Relevant Law

¶ 27    Although a juvenile court must sometimes find that a parent is unfit before it may terminate parental rights, *see* § 19-3-604(1)(c)(II), no such finding is required before a court may allocate parental responsibilities.  While parental unfitness "clearly constitutes a compelling reason not to return a child home," parental deficiencies less serious than unfitness can provide a

---

[1] Mother also briefly argues that the juvenile court erred because it "did not explain how the APR order was in [the child's] best interests."  In support of this argument mother cites *People in Interest of C.M.*, 116 P.3d 1278 (Colo. App. 2005).  While *C.M.* does require a *department* to "establish a compelling reason why it is not in the child's best interests to return home," we do not read *C.M.* as establishing a rule requiring a *court* to expressly explain how an APR is in the child's best interests before it may enter an APR judgment.  *Id.* at 1283.  Mother cites no other authority, and we are aware of none, that would require such findings.

compelling reason to deny the child's return when considered in light of the child's physical, mental, and emotional conditions and needs. *C.M.*, 116 P.3d at 1283. Thus, whether a parent is fit or unfit is not dispositive of whether an APR is in the child's best interests. *See L.B.*, 254 P.3d at 1208 (APR must be determined in accordance with the child's best interests; finding of parental unfitness not required for a child who has been adjudicated dependent or neglected).

## 2. The Juvenile Court Properly Focused on the Child's Best Interests in Granting an APR

¶ 28    First, mother argues that she was a fit parent. Though not required, the juvenile court found that mother was unfit at the time of the APR hearing. While the court did not make any specific findings about mother's treatment plan compliance, the court expressed concerns regarding her physical health and emotional stability. Given these concerns, the court found the APR was in the child's best interests.

¶ 29    As mother asserts, the mental health component of her treatment plan was held in abeyance and never actually adopted by

the court.  Despite that, the court noted concerns with mother's mental health when finding her unfit.

¶ 30 However, nothing in the record suggests that the juvenile court afforded undue weight to mother's mental health concerns. Rather than focusing on mother's mental health, the court focused on her physical well-being and the child's best interests.  The court also noted its concerns about mother's ability to put the child's needs above her own and found that mother was not "able to make decisions in [the child's] best interest and care for him in the manner that he needs to be cared for."  The court stated that since the child's removal from mother's care, his grades and attendance at school had improved, and his "negative behaviors ha[d] significantly decreased because he has had the stability and the . . . care and affection" he needed from brother "that he wasn't getting from [mother]."  This conclusion is supported by the record.

¶ 31 Mother next argues that she substantially complied with her treatment plan.  Mother's treatment plan required her to (1) successfully work with the Department to complete her treatment plan goals; (2) maintain safe and stable housing; (3) gain an understanding of and appropriately meet the child's physical,

emotional, medical, and educational needs; (4) provide protective, safe, and stable parenting to the child; and (5) connect with community resources and develop an understanding of the child's needs.

¶ 32 The record shows that mother was not in compliance with any of her treatment plan goals and that there were ongoing safety concerns about her ability to care for the child.

¶ 33 The caseworker testified that he was not in regular contact with mother at the time of the contested hearing because mother refused to speak with him. While mother had consistent housing throughout the case, the caseworker had concerns that the home was cluttered, many of the appliances were broken, and there were several holes in the walls from the child hitting and kicking them. The caseworker further reported that while in mother's care, the child was brought to the emergency room "with a high amount of frequency" and that it was "clear there was an overuse of the emergency department to provide care for the child." At one point, the hospital refused to release the child into mother's care because staff had concerns about mother and the child's safety, as well as mother's ability to care for the child. Additionally, while the child

lived with mother during the case, the caseworker never saw an improvement in the child's grades or attendance in school.

¶ 34 Most notably, the caseworker testified that he never saw any progress in any of mother's treatment plan areas for the entirety of the case and did not see an improvement in mother's ability to care for the child. By contrast, the caseworker testified that after the child was removed from mother's home, the caseworker had seen improvement in several areas and that brother was meeting all the child's needs.

¶ 35 Lastly, mother argues that there were no safety concerns during her parenting time and, therefore, the court unduly restricted her parenting time which was contrary to the child's best interests.

¶ 36 It is true that mother's parenting time reportedly went well without any safety concerns for the child. The child also expressed a desire to spend time with mother. However, the record contradicts mother's assertion that the court "incorrectly focused on its perception of [mother's] behavior" in determining parenting time, rather than the child's safety.

14

¶ 37    First, the juvenile court expressly found the APR to be in the child's best interests.  Second, as described above, the Department presented concerns about mother's ability to safely care for and meet the child's needs throughout the case.  Mother herself at times reportedly stated that she did not feel she was able to meet the child's needs.

¶ 38    Thus, because the juvenile court's findings are supported by the record, we discern no reversible error in the court's findings that mother was unfit and failed to comply with her treatment plan.  Likewise, we perceive no error in its ultimate conclusion that an APR was in the child's best interests.

## III.    Disposition

¶ 39    The portion of the APR judgment allowing brother the discretion to modify mother's parenting time is reversed, and the case is remanded to the juvenile court to enter orders consistent with this opinion.  The APR judgment is affirmed in all other regards.

JUDGE DUNN and JUDGE LIPINSKY concur.