25CA1875 Peo in Interest of RG 05-21-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1875
Weld County District Court No. 23JV104
Honorable Troy Hause, Judge

---

The People of the State of Colorado,

Petitioner,

In the Interest of R.G. IV and M.G., Children,

and Concerning N.S.,

Appellant and Cross-Appellee,

and R.L.G. III,

Appellee and Cross-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE SCHUTZ
Freyre and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 21, 2026

---

No Appearance for Petitioner

Josi McCauley, Counsel for Youth, Superior, Colorado, for R.G. IV and M.G.

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant and Cross Appellee

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellee and Cross-Appellant

¶ 1    In this dependency and neglect action, N.S. (mother) appeals the judgment allocating parental responsibilities of R.G. IV and M.G. (the youths) between mother and R.G. III (father).  We affirm.

## I.    Background

¶ 2    In 2023, the domestic relations court ordered the Weld County Department of Human Services to conduct an investigation into the family "due to significant concerns of parental conflict and emotional impact to the [youths]."  The Department subsequently filed a petition in dependency or neglect, raising concerns about domestic violence between mother and her partner and escalating conflict between mother and father.  The juvenile court adjudicated the youths — then ten and eleven years old — dependent or neglected and adopted treatment plans for both parents.

¶ 3    The youths were initially placed with mother.  However, nine months later it was discovered that mother had been violating the protective orders by allowing her partner to be in the home with the youths.  At that point, the juvenile court granted temporary custody of the youths to father, where they remained for the rest of the dependency action, with mother having significant parenting time.

¶ 4    Two years after the petition was filed, father moved to allocate parental responsibilities and close the dependency or neglect action. After a contested hearing, the juvenile court issued a detailed allocation of parental responsibilities (APR) order. As relevant here, the APR (1) designated father as the primary custodian during the school year; (2) granted mother unsupervised parenting time from after school Thursdays to before school Mondays for three weeks per month; (3) established a week-on/week-off parenting time schedule for the summer; (4) allocated decision-making for routine medical, dental, and eye care to mother; and (5) allocated joint decision-making responsibility for education, major medical decisions, and extracurricular activities that impact both parents' parenting time.

## II.    Standard of Review and Applicable Law

¶ 5    Allocating parental responsibilities is a matter within the sound discretion of the juvenile court. *See In re B.R.D.*, 2012 COA 63, ¶ 15. When there is record support for the juvenile court's findings, its resolution of conflicting evidence is binding on review. *Id.* However, whether a court has applied the correct legal standard presents a question of law that we review de novo. *Id.*

¶ 6    The juvenile court has exclusive authority to determine the legal custody of, or enter an APR judgment with respect to, a child within its jurisdiction. § 19-1-104(1)(c), C.R.S. 2025; *L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1389 (Colo. 1996).

¶ 7    Although the juvenile court must allocate parental responsibilities to best serve "the interests of the child and the public," § 19-3-507(1)(a), C.R.S. 2025, the Children's Code does not prescribe any specific factors the juvenile court must consider in making its decision. *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005). Still, the juvenile court must "be guided by the purposes of the Code and resolve the issue in a manner that furthers the best interests of the child and the public." *Id.* at 1283.

### III.    Preservation

¶ 8    We begin with mother's contention that the juvenile court erred because it would have been in the youths' best interests to grant her primary custody, and her related contention that the juvenile court was required to maintain the existing parenting order unless the order endangered the youths' physical health or significantly impairing their emotional development. See § 14- 10-129(2), C.R.s 20205; § 14-10-131(2), C.R.S. 2025. Mother did not

3

present these arguments in the juvenile court, instead she asserted that she and father should be granted equal parenting time. Because mother did not present these arguments to the juvenile court, they are not properly before us. *People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006) (arguments never presented to, considered by, or ruled on by the trial court may not be raised for the first time on appeal). Accordingly, we do not address the merits of these contentions. *See In re Marriage of Crouch*, 2021 COA 3, ¶ 13.

## IV. The APR Judgment

¶ 9    Mother generally contends that the juvenile court erred by requiring joint decision-making for major decisions and denying her requested parenting time schedule of one week-on/one week-off during the school year. We read mother's framing of these issues — that the terms of the APR were not in the youths' best interests —as a contention that the court abused its discretion by adopting the APR, rather than an attempt to assert the rights of the youths. *See C.W.B., Jr. v. A.S.*, 2018 CO 8, ¶ 18 ("Except in certain limited circumstances, 'a litigant must assert [their] own legal rights and interests, and cannot rest a claim to relief on the legal rights or

4

interests of third parties.'" (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013))). However, her challenge fails because there is record support for the findings and orders made by the juvenile court.

¶ 10 The juvenile court found that communication between mother and father was "not quite there to do one-week-on, one-week-off" during the school year and ordered "what is close to a fifty-fifty [parenting-time schedule] but primarily has the children residing with their father during the school week." The evidence supported the court's decision.

¶ 11 Mother testified that she did not believe that the youths' academic improvements could be attributed to primarily residing with father. But the caseworker, an expert in child protection, testified that the children's attendance, tardiness, and overall academic performance improved after living primarily with father during the school year, and opined that father was responsible for the improvement. The caseworker also opined that, although there were times that mother and father were able to work well together, in other instances their communication still prevented them from successfully co-parenting. The caseworker recommended that

father remain the primary residential custodian during the school year because of the youths' academic improvements under this schedule. Because we cannot reweigh the evidence, we must reject mother's assertion. *People In Interest of S.Z.S.*, 2022 COA 133, ¶ 29; *see also In re Marriage of Pawelec*, 2024 COA 107, ¶ 56 ("It is the trial court's responsibility to judge witness credibility, determine the weight and probative value of the evidence, and resolve evidentiary conflicts, and we may not disturb its findings in this regard.").

¶ 12    Mother also points to concerns that arose early in the two-year case, asserts that father did not comply with portions of his treatment plan, and alleges that father did not adequately support the children's relationship with her. But the record supports the juvenile court's findings that, by the time of the APR hearing, both parents had "come a long way[]" to complete their respective treatment plans and become fit parents. And while the caseworker did testify that she had not seen father actively encouraging the youths' relationship with mother, father testified that he was working to foster a relationship between mother and the youths "all the time." We will not reweigh this evidence. *S.Z.S.*, ¶ 29

¶ 13    Mother also claims that requiring her and father to agree on some extracurricular activities effectively foreclosed the youths' ability to participate because they would not be able to come to an agreement. But mother did not provide any evidence at the APR hearing that this would be the case. Instead, the caseworker testified that father demonstrated that he valued the youths' participation in extracurricular activities. Furthermore, father testified in detail about the many extracurricular activities that both youths participated in while mother and father exercised joint decision-making as part of the dependency and neglect action. Given the record support for the juvenile court's conclusion that mother and father could successfully continue to exercise joint decision-making responsibility, we discern no basis for reversal.[1]

## V.    Disposition

¶ 14    The judgment is affirmed.

JUDGE FREYRE and JUDGE BROWN concur.

---

[1] The youths concede mother's argument that an equal APR would have been in the children's best interest. But the youth did not file an appeal in this case and did not develop the merits of this concession beyond mother's argument, so we do not address it further.